## Terri A. Sabia v. State of Vermont
## Toni Lynn Patterson v. State of Vermont

[669 A.2d 1187]

Nos. 93-594 and 93-596

Present: Gibson, Dooley, Morse[1] and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned

Opinion Filed October 30, 1995

---

[1] Justice Morse sat on this case, but he has recused himself from taking part in the Court's decision.

294

*Kurt M. Hughes* of *Murdoch & Hughes*, Burlington, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, *Michael O. Duane*, Assistant Attorney General, Waterbury, and *Jeffrey J. Nolan* of *Dinse, Erdmann and Clapp*, Burlington, for Defendant-Appellee.

**Johnson, J.** Today, we consider whether the State of Vermont is immune from suit when state social workers neglect their statutory duty to provide assistance to children seeking protection from sexual abuse. Plaintiffs in this consolidated action are sisters claiming they were sexually assaulted by their stepfather during childhood and adolescence. They allege that the State, acting through employees of the Department of Social and Rehabilitation Services (SRS), failed to assist them, as required by law, despite their repeated reports of abuse, which were substantiated by other reliable sources. Based on

our conclusion that the State waived sovereign immunity under the facts and circumstances of this case, we reverse the superior court's order granting judgment on the pleadings in favor of the State; however, we affirm the court's ruling that an implied cause of action is not available directly under either the federal or state constitution.

## I. *Facts*

We must accept as true plaintiffs' allegations made in opposition to SRS's motion for judgment on the pleadings. *Thayer v. Herdt*, 155 Vt. 448, 456, 586 A.2d 1122, 1126 (1990). Plaintiff Toni Patterson, who was twenty-two years old when she filed suit in May 1992, was first sexually abused by her stepfather, Dennis Laplant, at the age of six or seven. She was thirteen years old in 1983 when she reported the abuse to a teacher, who informed SRS. An SRS supervisor met with Toni and the teacher in March 1983, at which time the supervisor stated that she would be in touch, and that either Toni or her stepfather would be removed from the home. No action was taken.

Plaintiff Terri Sabia, who is three years younger than her sister, was sexually abused by her stepfather beginning at age five. When Terri was approximately seven years old, a babysitter reported to SRS that she had observed physical signs of sexual abuse while bathing Terri. Apparently, nothing was done in response to the report. In 1983, when Terri was eleven years old, she reported to the school nurse and principal that Laplant had sexually assaulted her. School officials notified the director of the Franklin County Family Center, who investigated and reported to SRS that Laplant had admitted having sexual intercourse with Toni and "touching" Terri. SRS took no action in response to the report. The continuing abuse was reported to SRS again in 1986, but again nothing was done. Laplant's sexual abuse of plaintiffs continued unabated until 1987.

Plaintiffs filed suit in 1992, alleging that SRS breached its statutory duty to protect them from further abuse by failing "to take any steps to remove [them] from the home of Laplant, or to have Laplant removed from the home, and/or to formulate any plan to ensure [their] safety." Plaintiffs sought damages based on negligence, intentional infliction of emotional distress, and denial of due process of law. Concluding that the State had not waived its immunity to suit, and that a direct action was not available under either the federal or state constitution, the superior court granted judgment on the pleadings in favor of the State.

On appeal, plaintiffs argue that (1) Vermont's "good samaritan" law provides a private analog that permits this action against the State;

(2) the State's purchase of liability insurance covering the alleged negligent acts and omissions also permits this action;[2] and (3) they have claims under the federal and state constitutions.

## II. *Sovereign Immunity*

■ We first consider whether the State has waived its sovereign immunity with respect to the present action. Sovereign immunity bars suits against the State unless immunity is expressly waived by statute. *LaShay v. Department of Social & Rehabilitation Servs.*, 160 Vt. 60, 67, 625 A.2d 224, 228 (1993). The State has waived its immunity to certain types of suits under the Vermont Tort Claims Act, which provides, in part:

> The state of Vermont shall be liable for injury to persons . . . caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, *under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant* . . . .

12 V.S.A. § 5601(a) (emphasis added). Thus, the State remains immune "for governmental functions for which no private analog exists." *LaShay*, 160 Vt. at 68, 625 A.2d at 229. Under the "private analog" analysis adopted by this Court, the State waives its immunity only to the extent a plaintiff's cause of action is comparable to a recognized cause of action against a private person. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 486, 622 A.2d 495, 498 (1993). As we stated in *Denis*, the threshold issue is whether the plaintiff's factual allegations "satisfy the necessary elements of a cause of action against the State comparable to one that may be maintained against a private person." *Id.* at 487, 622 A.2d at 498.

### A. *Statutory Duty*

Plaintiffs' principal claim against SRS is one of negligence, which is predicated upon the Department's breach of a statutory duty of care. *Denis* requires that we determine whether such a duty exists under the circumstances of this case. *Id.* In its legal sense, duty is "'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.'" *Id.*

---

[2] Our disposition of the first issue obviates the need to consider this issue.

(quoting W. Keeton, Prosser and Keeton on the Law of Torts § 53, at 358 (5th ed. 1984)). In determining whether a governmental body has undertaken a duty of care toward specified persons above and beyond its duty to the public at large, we consider (1) whether a statute sets forth mandatory acts for the protection of a particular class of persons; (2) whether the government has knowledge that particular persons within that class are in danger; (3) whether those persons have relied on the government's representations or conduct; and (4) whether the government's failure to use due care would increase the risk of harm beyond what it was at the time the government acted or failed to act. *Id.*

Each of these factors weighs heavily in favor of finding a duty in the present case. Regarding the first factor, statutory law provides that (1) SRS "*shall* cause an investigation to commence within seventy-two hours after receipt of a report" of child abuse, 33 V.S.A. § 4915(a) (emphasis added); (2) the investigation "*shall* include" a visit to the child's home and an interview with, or observation of, the child, and shall seek to determine, among other things, the identity of the abuser and the immediate and long-term risk if the child remains in the existing home, *id.* § 4915(b) (emphasis added); and (3) if the investigation produces evidence of abuse or neglect, SRS "*shall* cause *assistance* to be provided to the child and his family in accordance with a written plan of treatment." *Id.* § 4915(c) (emphasis added). Further, the stated purposes of the provisions requiring SRS to investigate reports of child abuse and render appropriate services are to "protect children whose health and welfare may be adversely affected through abuse or neglect," to "strengthen the family and make the home safe for children," and to "provide a temporary or permanent nurturing and safe environment for children when necessary." 33 V.S.A. § 4911. Thus, it is beyond dispute that the relevant statutory provisions create a duty on the part of SRS to assist a particular class of persons to which plaintiffs belong and to prevent the type of harm suffered by plaintiffs. See Restatement (Second) of Torts § 286 (1965) (court may adopt as standard of conduct requirements of statute whose purpose is to protect class of persons that includes plaintiff from type of harm suffered by plaintiff); cf. *Cronin v. State*, 148 Vt. 252, 255, 531 A.2d 929, 931 (1987) (no private cause of action available under state regulation not promulgated for plaintiff's special benefit).

As for the other three factors mentioned in *Denis*, the alleged facts indicate that SRS employees knew or strongly suspected that

plaintiffs were being sexually abused, and thus were in danger. Further, plaintiffs contend that their reliance on SRS's promise to do something deterred them from seeking other avenues of relief. Finally, SRS's failure to act increased the risk of injury by allowing the harm to continue unabated, which may have encouraged the perpetrator by leading him to believe that he could continue abusing plaintiffs with impunity.

Accordingly, we conclude that SRS had a duty to protect plaintiffs under the circumstances of this case. In doing so, we join several courts in other jurisdictions that have found state social services agencies liable for violating their statutory duty to assist abused children. See, e.g., *Mammo v. State*, 675 P.2d 1347, 1351 (Ariz. Ct. App. 1983) (because statute specifically set forth social workers' duties with regard to protection of threatened children, agency could be held liable for its failure to protect child murdered by boyfriend of custodial spouse following unheeded complaint of abuse); *Turner v. District of Columbia*, 532 A.2d 662, 675 (D.C. 1987) (considering that social services agency was repeatedly notified of father's abuse and neglect of two children, and that agency was required by law to conduct prompt investigation and to take certain actions necessary to protect individually identified children, agency's breach of statutory duty was actionable); *Department of Health & Rehabilitative Servs. v. Yamuni*, 529 So. 2d 258, 261-62 (Fla. 1988) (statute requiring social services agency to provide assistance to children following specific reports of abuse created legal duty actionable within scope of tort claims act); *Coleman v. Cooper*, 366 S.E.2d 2, 8 (N.C. Ct. App. 1988) (violation of statute requiring social services agency to provide assistance to abused children following reports of abuse gave rise to action for negligence when agency was aware that children had suffered sexual abuse); *Brodie v. Summit County Children Serv. Bd.*, 554 N.E.2d 1301, 1308 (Ohio 1990) (social services agency is liable to abused children when it fails to perform statutorily mandated duties designed to protect specific individuals whose abuse is reported); *Jensen v. Anderson County Dep't of Social Servs.*, 403 S.E.2d 615, 619 (S.C. 1991) (child abuse statute imposes special duty on agency and its social workers to intervene in cases where child abuse has been reported); cf. *Owens v. Garfield*, 784 P.2d 1187, 1192 (Utah 1989) (child abuse statute creates duty on part of agency to protect only those children who are identified to agency as suspected victims of abuse).

## B. *Private Analog*

Nevertheless, SRS argues, and the superior court agreed, that the Department cannot be held liable for its failure to perform a "uniquely governmental function." Citing our acknowledgement in *LaShay* that only the government can remove children from their homes, 160 Vt. at 69, 625 A.2d at 229, SRS contends that there can be no private analog for this type of action.[3] The Department and the superior court construe plaintiffs' complaint too narrowly. As noted, plaintiffs alleged that SRS failed "to take any steps to remove [them] from the home of Laplant, *or* to have Laplant removed from the home, *and/or* to formulate any plan to ensure [their] safety." (Emphasis supplied.) SRS is correct that § 4915 does not require the Department in all instances to remove abused or neglected children from their home, but it does require the Department to thoroughly investigate charges of abuse and to "cause assistance to be provided" pursuant to a written plan of treatment when an investigation produces evidence of abuse or neglect. Although it is true that, in all but exceptional circumstances, separation of the children from the perpetrator will be necessary in cases of sexual abuse, it is conceivable that intervention short of removal could have prevented further harm to plaintiffs. In any event, plaintiffs' actual complaint is that SRS failed to provide any assistance whatsoever, despite its statutory duty to do so. Thus, a broader question is more appropriate: Does a private analog exist for an action based on SRS's failure to perform its statutory duty to assist children seeking protection from reported and substantiated abuse?

We conclude that a private analog does exist under the facts and circumstances of this case. Before proceeding with our analysis, we emphasize that we need not determine that plaintiffs would prevail in their suit if SRS were a private entity. See *Peters v. State*, 161 Vt. 582, 583, 636 A.2d 340, 341 (1993) ("same circumstances" language of Tort Claims Act does not require showing that private person would have been liable under precisely same situation as state); *Leone v. United States*, 690 F. Supp. 1182, 1189 (E.D.N.Y. 1988)

---

[3] Citing *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988), SRS also argues that its statutory duty to provide procedural protections to abused children is a government duty that private persons could not engage in. *Chen* involved a federal agency's failure to follow procedural regulations requiring that notice and a hearing precede the suspension of government contractors. This case involves more than an agency's failure to provide procedural due process protections. SRS violated its statutory duty to provide substantive aid to children in need of its protection.

(Second Circuit has "not required exactly the same private sector activity as a predicate for finding liability"); cf. *Yamuni*, 529 So. 2d at 260 (rejecting notion that "private analog" language of tort claims act exempts all governmental activities, including social workers' handling of child abuse complaints, from waiver of sovereign immunity; so construed, language would emasculate waiver and defeat its salutary purpose). Rather, we need find only that the cause of action is "comparable" to actions recognized against private persons. *LaShay*, 160 Vt. at 68-69, 625 A.2d at 229 (citing "analogous situations" in addition to "direct analog"). The purpose of the private-analog provision is not to bar, without exception, suits claiming injuries based on the breach of duties performed by government employees performing government services, but rather to place constraints on how creative courts can be in finding duties where none had previously existed. *Denis*, 159 Vt. at 486, 622 A.2d at 498 (effect of private-analog language is to prevent government from being visited with novel and unprecedented liabilities); see *Indian Towing Co. v. United States*, 350 U.S. 61, 64 (1955) (rejecting interpretation of private-analog language that would automatically preclude liability for performance of acts that could not be performed by private parties).

We recognize that there is no apparent direct analog in this case, as there was in *LaShay*. But see *Yamuni*, 529 So. 2d at 261 n.2 ("[I]t is by no means clear that private persons do not, or could not, perform services such as accepting and investigating reports of child abuse and initiating such court action as necessary to protect the child from further abuse."). There are, however, analogous situations under common-law tort principles. Indeed, under facts similar to this case, the United States Supreme Court recognized as much while refusing to find a constitutional duty enforceable under the Fourteenth Amendment. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 201-02 (1989). According to the Court, by voluntarily undertaking to protect an abused child from a danger it played no part in creating, the social services agency may well have "acquired a duty under state tort law to provide him with adequate protection against that danger." *Id.*; see *Brodie*, 554 N.E.2d at 1305 (declining to give social services agency absolute immunity under similar facts, noting that *DeShaney* and other cases were inapposite because causes of action in those cases were not based on negligence).

■ The *DeShaney* Court cited Restatement (Second) of Torts § 323 (1965), which states that a person who undertakes, gratuitously

or for consideration, to render to another services that the person should recognize as necessary to protect the other, is subject to liability for physical harm resulting from negligent performance of the undertaking if (1) the negligence increases the risk of harm, or (2) the harm results from the other's reliance upon the undertaking. See *Smyth v. Twin State Improvement Corp.*, 116 Vt. 569, 570-71, 80 A.2d 664, 665 (1951) (citing § 323 for principle that law imposes obligation upon everyone who attempts to do anything for another, even gratuitously, to exercise some degree of care and skill, and that action lies for nonperformance of duty). This section applies whether the harm results from the defendant's negligent performance of the undertaking, or from the defendant's failure to exercise reasonable care to complete the undertaking or to protect the other person when the undertaking is discontinued. Restatement § 323, cmt. a. Further, the undertaking may not be discontinued when the danger of harm to the other person increased as a result of the undertaking, or because the other person, in reliance upon the undertaking, was induced to forego other opportunities of obtaining assistance. *Id.* § 323 cmt. c.

A sticking point in this rule is determining what conduct amounts to an undertaking. While taking no position on whether a gratuitous promise suffices, the Restatement notes that courts generally require very little action on the part of defendants to find an undertaking. *Id.* § 323 caveat and comment d; W. Keeton, *supra*, § 56, at 379) ("very little extra" beyond mere gratuitous promise is required for assumption of duty); cf. *O'Brien v. Island Corp.*, 157 Vt. 135, 137, 596 A.2d 1295, 1296 (1991) (defendant did not "undertake" to assume plaintiff's duty, as required by § 324A of Restatement (Second) of Torts, because it "did not contract *or promise* to inspect the premises").

■ The present case is analogous to circumstances that would create liability under § 323. SRS met with at least one of the plaintiffs and was aware, based on repeated credible reports, that Laplant was sexually abusing both girls. Following her meeting with Toni Patterson, an SRS employee promised that something would be done within days. Plaintiffs allege that they relied on these assurances, which may have prevented them from seeking help from other sources. Certainly, it may be inferred that sexually abused teenagers would be disheartened from renewing efforts to seek help when their efforts to that point had been ignored by the agency responsible for preventing the harm they suffered. Nor is there any doubt that the continued abuse following SRS's failure to act posed an increased risk of harm by sending the message to the perpetrator that he could act

with impunity. Cf. Restatement (Second) of Torts § 324 cmt. c (further injury or increase in injury may be aggravation of original harm).

Even if SRS did not "undertake" to help plaintiffs, 12 V.S.A. § 519 provides a private analog for the present action. Under § 519(a):

> A person who knows that another is exposed to grave physical harm shall, to the extent that the same can be rendered without danger or peril to himself or without interference with important duties owed to others, give reasonable assistance to the exposed person unless that assistance or care is being provided by others.

Persons providing reasonable assistance under this statute are liable for damages in a civil suit if their acts are grossly negligent or they expect to receive remuneration for their services. *Id.* § 519(b). Here, SRS workers had a statutory duty within the scope of their employment to provide assistance in response to plaintiffs' credible reports of abuse; therefore, a cause of action based on their inaction is analogous to liability for civil damages under § 519.[4]

This case may also be analogized to circumstances that would create liability under § 324, a variant of § 323. Section 324 imposes a duty of care upon those who take charge of helpless persons, even when they are not required to do so. See W. Keeton, *supra*, § 56, at 373-74 (trend in past century toward allowing liability for nonfeasance is most pronounced in situations where plaintiff is particularly

---

[4] Courts in jurisdictions with similar good samaritan statutes have held that medical personnel who had a pre-existing duty toward the plaintiff cannot escape liability for their negligent acts by claiming that the statute makes them liable in civil suits only for acts of gross negligence. See *Bunting v. United States*, 884 F.2d 1143, 1147 (9th Cir. 1989) (Coast Guard could not be held liable for ordinary negligence because it was under no pre-existing duty to rescue; *Clayton v. Kelly*, 357 S.E.2d 865, 868 (Ga. Ct. App. 1987) (because purpose of good samaritan statute is to induce voluntary rescue by removing fear of potential liability, statute is directed at persons who are not under some pre-existing duty to rescue); *Willard v. Mayor & Aldermen of Vicksburg*, 571 So. 2d 972, 975 (Miss. 1990) (those who have pre-existing duty to render aid should not be allowed to hide behind good samaritan statute). It would be ironic if we were to twist this rationale to hold that government employees who have a pre-existing duty to assist others can have no private analog under 12 V.S.A. § 519(a). Indeed, because SRS has a duty to act in the circumstances presented in the instant case, it would be inappropriate to limit civil damages to acts of gross negligence. Cf. *Bunting*, 884 F.2d at 1145 (assuming Coast Guard was not under pre-existing duty to rescue, Coast Guard medic's liability would be same as private physician rendering emergency services). Although the analogy with § 519 is not complete, it is "comparable."

vulnerable and dependent on defendant). Here, of course, SRS had a duty to protect plaintiffs, but failed to do so; as a result, plaintiffs suffered further injury. Given its statutory duty, SRS could hardly claim exemption from liability because it did not take charge of plaintiffs or because its failure to act left plaintiffs in no worse position than they would have been had plaintiffs never sought its help. See Restatement (Second) of Torts § 324, caveat (Restatement expresses no opinion on whether person may be liable for harm resulting from discontinuance of aid to helpless person when helpless person was left in no worse position than he or she would have been had no aid been rendered).

Section 315(b) of the Restatement (Second) of Torts presents another analogous situation. It states that there is no duty to control the conduct of a third person so as to prevent that person from causing harm to another "unless . . . a special relation exists between the actor and the other which gives rise to the other a right to protection." Restatement § 315(b); see *Peck v. Counseling Serv. of Addison County, Inc.*, 146 Vt. 61, 65, 499 A.2d 422, 425 (1985) (applying § 315 in finding that mental health professional has duty, under certain circumstances, to exercise reasonable care to protect third parties from patient) (opinion of Hill, J.). While in most cases the "special relationship" requires that the actor have custody of the other, as in a prison or school setting, see Restatement § 314A(4) (special relation created when person is required by law to take custody of another under circumstances that deprive other of normal opportunities for protection), courts have not always required a custodial relationship under facts similar to this case. See *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 509 (3d Cir. 1985) (citing *Jensen v. Conrad*, 747 F.2d 185, 194 (4th Cir. 1984), for proposition that abused child's right to protection can exist absent custodial relationship between child and agency required to protect child)[5]; *Turner*, 532 A.2d at 667, 673 (report of child abuse created "special relationship" between specifically identified child and agency statutorily required to protect abused children).

 The relationship established between a specifically identified abused child and the agency that is required by statute to protect abused children "is a very special one." *Yamuni*, 529 So. 2d at 261 (in

---

[5]We realize that the Supreme Court in *DeShaney*, 489 U.S. at 198 n.4, rejected the *Bailey-Jensen* "special relationship" analysis; however, as noted above, the Court rejected this analysis only within the context of a substantive due-process argument.

jurisdiction with tort claims act containing private-analog provision, court found special relationship that created agency's duty to protect abused children). When a special relationship such as this is created, social policy considerations warrant the imposition of liability on the party charged with the duty to protect those who depend on that protection, not only to provide compensation to the abused children but to encourage the protective agency to perform its duty diligently in the future.[6]

## C. *Proximate Cause*

SRS also contends that proximate cause cannot exist under the circumstances of this case. We conclude that the fact finder could find that SRS's inaction was a proximate cause of Laplant's continued abuse of plaintiffs. In a recent case, we concluded that SRS's failure to properly oversee the home placement of a fourteen-year-old boy under its legal custody was not, as a matter of law, the proximate cause of the boy's sexual assault and murder of his seven-year-old cousin. *Estate of Sumner v. Department of Social & Rehabilitation Servs.*, 162 Vt. 628, 629-30, 649 A.2d 1034, 1036-37 (1994). In doing so, we pointed out that the wrongful act of a third person generally is an efficient intervening cause unless the actor had a duty to anticipate the wrongful act. *Id.* at 629, 649 A.2d at 1036. Unlike *Sumner*, in this case a reasonable jury could conclude that SRS should have anticipated Laplant's continued abuse of plaintiffs, and that SRS's failure to assist the girls was one of the proximate causes of the abuse. Cf.

---

[6] In addition to alleging negligence, plaintiffs allege intentional infliction of emotional distress, whose elements include (1) extreme and outrageous conduct, (2) done intentionally or with reckless disregard of the probability of causing emotional distress, and (3) which results in the suffering of extreme emotional distress. *Denton v. Chittenden Bank*, 163 Vt. 62, 66, 655 A.2d 703, 706 (1994). We conclude that the State has waived immunity with respect to this count. Above, we determined that SRS has a statutory duty to assist abused children when evidence supports reports of their abuse or neglect, and that this duty is analogous to situations involving suits against private parties. Accordingly, outrageous conduct in disregarding that duty should also be actionable. See Restatement (Second) of Torts § 500 cmt. e (violation of statutory duty may constitute reckless disregard for safety of others when statute is intentionally violated and actor should have recognized that failure to follow statute most likely would result in serious harm); see also *Denton*, 163 Vt. at 68, 655 A.2d at 707 (otherwise unactionable conduct may become extreme and outrageous if actor knows that other is peculiarly susceptible to emotional distress because of some physical or mental condition); *Thayer v. Herdt*, 155 Vt. 448, 455-56, 586 A.2d 1122, 1126 (1990) (reasonable jury could conclude that police chief's failure to follow up on report of woman's abduction was extreme and outrageous conduct that would allow recovery for intentional infliction of emotional distress).

*Haselhorst v. State*, 485 N.W.2d 180, 188 (Neb. 1992) (foster child's sexual abuse of foster parents' children was not efficient intervening cause of injury, given social services agency's failure to warn parents of foster child's dangerous propensities); *Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 54 (Utah 1983) (trial court could have found that agency's failure to supervise child's foster home was independent proximate cause of child's murder at hands of foster parents' teenage son, given repeated signs of abuse over time).

### D. *Discretionary Duty Exception*

■ Because we hold that the private-analog provision of the Tort Claims Act does not bar plaintiffs' suit, we briefly address the discretionary duty exception.[7] Under this exception, the State's waiver of sovereign immunity does not apply to acts or omissions of state employees that are "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." 12 V.S.A. § 5601(e)(1).[8] The purpose of this exception is to assure that the courts do not invade the province of coordinate branches of government by passing judgment on legislative or administrative policy decisions through tort law. Restatement (Second) of Torts § 895B cmt. d (1979); W. Keeton, *supra*, § 131, at 1046; cf. *Hudson v. Town of East Montpelier*, 161 Vt. 168, 175, 638 A.2d 561, 566 (1993) (act of government employee is "discretionary" if "employee's action involved the type of policy considerations not suitable for review under the judicial system's traditional tort standards").

Generally, statutory duties that involve a predictable standard for decision making are ministerial, and thus subject to tort suits. W. Keeton, *supra*, § 131, at 1046-47; see *LaShay*, 160 Vt. at 67, 625 A.2d at 228 (if reporting child abuse was mandatory, it was ministerial); *Libercent v. Aldrich*, 149 Vt. 76, 82, 539 A.2d 981, 984 (1987) (agency's absolute duty to perform periodic inspections of state motor vehicles was ministerial in nature and thus not immune from tort liability; agency had no right to fail to inspect and maintain, or to negligently

---

[7]This exception does not apply to the extent that the State has liability insurance coverage for the alleged wrongful acts. 12 V.S.A. § 5601(f).

[8]Section 5601(e) also excepts from the State's waiver acts or omissions of a state employee "exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid." The purpose of this exception is to bar "tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953). Therefore, the exception is inapplicable here.

maintain, trucks). Considering the law in this area and the current state of the record in this case, judgment on the pleadings in favor of the State based on the discretionary duty exception would be inappropriate. Cf. *Yamuni*, 529 So. 2d at 260 (caseworkers' failure to act on reports of child abuse did not involve discretionary policy decisions; thus, caseworkers were not immune from suit); *Little*, 667 P.2d at 51 (no official immunity under discretionary function exception for state's failure to properly evaluate foster home and to protect foster child from harm).

## E. *Summary*

 We hold that SRS had a duty to protect plaintiffs from continued abuse, and that, because their suit is analogous to tort suits against private persons, it is not barred by § 5601(a) of the Tort Claims Act, 12 V.S.A. §§ 5601-5606. Further, the allegations of the complaint are sufficient to show that SRS was negligent in fulfilling its statutory duty toward plaintiffs, and that its failure to perform its duty proximately caused further abuse to plaintiffs. See *Thayer*, 155 Vt. at 456, 586 A.2d at 1126 (where plaintiff's pleadings contain allegations that, if proved, would permit recovery, defendant may not secure judgment on the pleadings). We note, however, that SRS may yet present evidence that it did not act negligently in breaching its statutory duty, or that the failure of its employees to perform their duty did not proximately cause plaintiffs' continued abuse. See *Lash v. J.J. Newberry Co.*, 510 F.2d 429, 434 (2d Cir. 1975) (under Vermont law, defendant may show that ordinance or statute was not violated or that violation was not negligent under circumstances of case). Further, assuming the State did not have insurance covering the alleged negligent acts, the State may present evidence that the acts or omissions of its employees in this case involved basic policy decisions immune from suit. Cf. *Jensen*, 403 S.E.2d at 620 (remand for further evidence on whether agency's determinations regarding investigation of child abuse were discretionary in nature).

## III. *Statute of Limitations*

The State argues that, notwithstanding the issue of sovereign immunity, judgment on the pleadings should be affirmed with respect to plaintiff Patterson because her suit was not filed within three years of her eighteenth birthday. See 12 V.S.A. § 512(4) (except as otherwise provided, actions for injury to person suffered by act or default

of another shall be commenced within three years after cause of action accrues); *id.* § 551 (when person entitled to bring action is minor, action may be brought within time set forth in relevant statute of limitations after disability is removed). According to the State, the six-year statute of limitations for actions based on childhood sexual abuse applies only in suits against the perpetrators of the abuse, not other persons whose negligence may have contributed to the abuse. See *id.* § 522.

In support of its argument, the State points out that under § 522 an action shall be commenced within six years of the "act" alleged to have "caused" the injury, and that the statute defines "childhood sexual abuse" as any "act" committed "by the defendant." Further, the State notes that under the statute the victim need not establish which "act" in a series of continuing sexual abuse incidents caused the injury. In the State's view, if the Legislature had intended to allow nonperpetrators to be defendants under the expanded statute of limitations, it would have required plaintiffs to establish which incident of sexual abuse caused the injury.

We find nothing in the statutory language suggesting that the Legislature intended to exclude nonperpetrators from the reach of the statute. Use of the word "act" in different contexts in different sentences of the statute does not compel the conclusion that the "act" complained of must always be the "act" of sexual abuse itself. The statute applies to civil actions "brought by any person *for recovery of damages for injury suffered as a result of childhood sexual abuse.*" *Id.* (emphasis added). Plaintiff Patterson's suit plainly falls within the scope of the statute. We decline to read the term "against the perpetrator" into a remedial statute whose purpose is to benefit victims of childhood sexual abuse, not to punish the perpetrators of the abuse. See *Cavanaugh v. Abbott Lab.*, 145 Vt. 516, 529-30, 496 A.2d 154, 162 (1985) (declining to read unexpressed limitation into statute of repose); cf. *Clymer v. Webster*, 156 Vt. 614, 623, 596 A.2d 905, 910 (1991) (because wrongful death statute was designed to allay harsh common-law rule denying liability due to death of victim, it is remedial in nature and must be construed liberally).

## IV. *Constitutional Claims*

Because plaintiffs' due process argument may come into play on remand, we address, and reject, their contention that they have a cause of action under both the federal and Vermont constitutions.

Plaintiffs first contend that Vermont's child protection statutes give them an "entitlement" to protective services, and that the State's failure to halt the reported and substantiated abuse deprived them of such entitlement without due process of law as guaranteed by the Fourteenth Amendment. We conclude that this argument must fail.

The United States Supreme Court has limited causes of actions seeking monetary damages directly under the United States Constitution to suits against *federal* officials acting in their *personal* capacity. See *FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994) (extension of *Bivens*-type action to include suits against agencies of federal government is inappropriate). Because 42 U.S.C. § 1983 provides a damage remedy to redress injuries resulting from violations of federal statutory or constitutional rights under color of state law, courts have been particularly reluctant to imply a constitutional damage remedy against states under the Fourteenth Amendment. See *Williams v. State*, 156 Vt. 42, 49 n.7, 589 A.2d 840, 845 n.7 (1990) ("We do not believe a *Bivens*-type action may be brought directly under the Fourteenth Amendment in light of Congress' express provision in 42 U.S.C. § 1983 for a damage remedy against state officials who have violated federal law."); *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979) (direct action against municipality under Fourteenth Amendment not available because municipality is subject to § 1983 liability); *Hammond v. Creative Fin. Planning Org.*, 800 F. Supp. 1244, 1248 (E.D. Pa. 1992) (Supreme Court has never held that implied private right of action against state or state actors exists under Fourteenth Amendment); *Lombard v. Board of Educ. of City of New York*, 784 F. Supp. 1029, 1034-35 (E.D.N.Y. 1992) (accord with *Turpin*); 3 J. Cook & J. Sobieski, Civil Rights Action ¶ 14.03[F], at 14-47 and ¶ 14.02[B], at 14-32 (1994) (lower federal courts have uniformly held that implied *Bivens*-type action is precluded where § 1983 is available; need for *Bivens* action to enforce Fourteenth Amendment is problematic because violation of that amendment, which is limitation on state action, can be addressed under § 1983); cf. *Shields v. Gerhart*, 163 Vt. 219, 230, 658 A.2d 924, 932 (1995) (recent United States Supreme Court decisions have focused on existence of alternative statutory remedies in declining to imply direct constitutional remedies).

■ Plaintiffs seek damages directly under the United States Constitution rather than under § 1983 in an apparent attempt to avoid the Supreme Court's holding that neither the State nor state officials acting in their official capacity are "persons" under § 1983 in

a suit for damages. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Nevertheless, there is no inconsistency between (1) plaintiffs' inability to recover damages under § 1983 because of limitations in that statutory remedy, and (2) our refusal to allow damages directly under the Fourteenth Amendment because of the availability of the more limited statutory remedy. *Ohland v. City of Montpelier*, 467 F. Supp. 324, 348 (D. Vt. 1979). Courts have shown great reluctance to exercise judicial power to imply a damage remedy directly under the constitution when Congress has created an alternative remedy, even when limitations in the statutory remedy make it unavailable to the plaintiffs seeking relief. *Id.*; see *Shields*, 163 Vt. at 230, 658 A.2d at 932 (United States Supreme Court has apparently abandoned requirement that there be "equally effective" remedy).

Plaintiffs also argue that SRS's failure to act denied them their right to "safety" as guaranteed by Chapter I, Article 1 of the Vermont Constitution. This argument cannot withstand our decision in *Shields*, where we held that Article 1 "is not self-executing" and "does not provide rights to individuals that may be vindicated in a judicial action." 163 Vt. at 226, 658 A.2d at 929.

## V. *Conclusion*

The tragedy of child abuse undermines the fabric of society for generation after generation. This tragedy is compounded when confirmed abuse could have been prevented by the timely intervention of those bound to protect children from the abuse. The Legislature has recognized the significance of the problem and has set forth a statute mandating certain actions on the part of state employees for the purpose of protecting children from abuse and neglect. The statute imposes a duty that demands special vigilance to assure that assistance will be provided to those who are helpless to protect themselves.

We recognize that in protecting children, SRS must also be cognizant of the rights of parents and the goal of reunification, and that these countervailing concerns, in addition to the limited resources available, complicate the ability of the Department's employees to fulfill their duties diligently. But these difficulties cannot create a shield to deflect claims that the Department acted negligently in doing what the law requires it to do. The consequences — the brutalization of children — are far too great. As we stated above, a special relationship is created when SRS learns of a child's abuse or

neglect. This special relationship compels action as required by law. Like other special relationships recognized in common-law tort actions against private individuals, the relationship may form the basis of a suit against the State when state employees negligently perform, or fail to perform, their statutory duty. Indeed, social policy considerations demand that we recognize the violation of statutory duties whose diligent performance is crucial to protecting abused children and preserving basic human dignity.

*Reversed and remanded.*