Huminski v. Wright, No. 5-10-98 Bncv  (Carroll, J., Feb. 10, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    BENNINGTON SUPERIOR COURT
BENNINGTON COUNTY, SS.                             DOCKET NO. 5-10-98Bncv

SCOTT HUMINSKI,
DANA HUMINSKI,
     Plaintiffs,

     V.

WILLIAM WRIGHT,
JOHN LAVOIE,
DAVID MINER,
STATE OF VERMONT,
     Defendants.

### ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

In this second round of summary judgment motions, Plaintiffs seek summary judgment on their remaining claims.  Defendants oppose Plaintiffs' motion and seek summary judgment on their behalf on all remaining claims.[1]  For the following reasons, Plaintiffs' motion for partial

---

[1] By order dated July 19, 2004, the Court dismissed all claims against Defendants Wright and Lavoie and also dismissed the claim against the State related to these Defendants' alleged actions.  However, the Court did not dismiss the negligent hiring, training, and supervising claim against the State nor the claim of contractual interference against Defendant Miner.  This order will resolve all pending claims.

1

summary judgment is **DENIED**, and Defendants' motion for summary judgment is **GRANTED**.

## CONCLUSIONS OF LAW

### Standard for Summary Judgment

A Court should grant summary judgment when there are no genuine issues as to any material fact, and applying the applicable law, the party so moving is entitled to judgment as a matter of law. V.R.C.P. 56. The party moving for summary judgment must present facts sufficient for the Court to find an absence of a genuine issue of material fact and the Court will view the evidence favorably to the nonmoving party Pierce v. Riggs, 149 Vt. 136, 138 (1987).

### Background

The undisputed facts on this claim are as follows:[2] Plaintiff Scott Huminski was criminally charged in connection with the sale of some alcohol to a minor. He later changed his plea, entering into a plea agreement with the State. Plaintiff was represented by counsel and the State was represented by Deputy State's Attorney John Lavoie. Part of the plea agreement was an understanding that the Plaintiff would dismiss three civil lawsuits he had pending against others involved in the underlying case. Plaintiff dismissed the cases, but some were later re-filed in his wife's name. The State sought to vacate the plea and the plea agreement, arguing that Plaintiff had not fulfilled his promises pursuant to the agreement. Judge Nancy Corsones

---

[2]The Court is utilizing the statement of undisputed facts filed by Defendants in support of their motion as Plaintiffs have not responded with any articulable facts relating to this claim. Although Plaintiffs filed a response to Defendants' Cross Motion for Summary Judgment, the response does not contravene the facts as outlined by Defendants.

2

granted the State's request.  However, Judge Paul Hudson later ruled, pursuant to Plaintiffs' Motion to Dismiss his criminal charges, that the State could not vacate the plea agreement based on double jeopardy concerns.  Plaintiffs' extensive litigation followed.

## I.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs' Motion for Partial Summary Judgment must be **DENIED**.  The motion consists of a brief statement and four numbered paragraphs under the heading "Statement of Undisputed Fact."  (See Pl.'s Mot. for Partial Summ. J. (liability only), filed September 20, 2004.)  The motion does not discuss the pending claims, nor why Plaintiffs are entitled to judgment as a matter of law on the remaining claims of contractual interference (Miner) and negligent hiring, training, and supervising (the State).

Plaintiff characterizes his theory of recovery in his motion for partial summary judgment as follows: "Vermont has failed to train, supervise and retire [sic] concerning the principle that it is not acceptable for Vermont prosecutors to engage in crime in the zeal to prosecute alleged crime."  (Pl.'s Mot. for Partial Summ. J. (liability only), at 1.)  The material facts as characterized by Plaintiffs are that Lavoie and Wright "threatened Huminski with criminal charges for the act of engaging in civil litigation . . . engaged in a plea agreement whereby they traded favorable plea terms in exchange for the dismissal and non-pursuit of civil matter against themselves and their friends. . . . [and] engaged in retaliation against Huminski via their motion to vacate plea in violation of Double Jeopardy and the First Amendment."  (Id.)[3]

---

[3]In contrast, Defendants recount the facts as characterized by Plaintiffs as follows: the "bribe" was a plea agreement between Plaintiffs, through counsel, and Defendants, as recorded

3

However, Plaintiffs choose to ignore the factual landscape and instead focus on dire-sounding allegations that are principally their own characterization of the factual record. Rather than argue to the Court in either their partial summary judgment motion or response to Defendants' cross-motion how the underlying facts amount to a "bribe," a "threat," and "retaliation" (which in turn amount to negligent supervision by the State), Plaintiffs choose rather to rest on the power of the allegations' distasteful and dramatic connotations. In both their partial summary judgment motion and response to Defendants' cross-motion, Plaintiffs have merely rested on their allegations throughout. See V.R.C.P. 56(e) (when summary judgment motion is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading").

Plaintiffs in no way articulate how these allegations (termed facts) amount to negligence sufficient to overcome qualified immunity and sovereign immunity, nor how they make out a prima facie case of negligence in the first instance.[4] Plaintiffs have alleged no facts which relate

---

in the transcript of the Change of Plea Hearing. (Def.'s Counter-statement of Material Facts and Statement of Material Facts Not in Dispute, at Ex. 1.) The "threat" was a statement made to Plaintiff "regarding possible additional criminal charges against Plaintiff if he continued harassing, through civil litigation, the victim and investigating officer in the criminal case against Plaintiff." (Id. at 1-2.) The "retaliation" consisted of Wright and Lavoie's unsuccessful attempt to vacate the plea and reinstate the charges against Defendant.

[4]For example, given that this Court previously ruled that Defendants Wright and Lavoie were entitled to absolute immunity in decisions taken concerning plea agreements and

4

to these Defendants nor any arguments regarding the applicable law. The motion and accompanying statement of facts are simply a rehashing of Plaintiffs' allegations against former Defendants Wright and Lavoie. Therefore the Court cannot find, pursuant to Plaintiffs' motion, that they are entitled to a judgment as a matter of law on these claims.

## II. Defendants' Cross Motion for Summary Judgment

Defendants, the State of Vermont and David Miner, move for summary judgment on all of Plaintiffs' remaining claims of negligent hiring and supervision against the State, and of tortious interference against Miner. For the following reasons, Defendants' cross-motion for summary judgment must be **GRANTED**.

At the outset, the Court will note that although Plaintiff filed an opposition to Defendant's cross-motion for summary judgment, Plaintiffs' responsive pleading falls far short of what is required by V.R.C.P. 56, and provides little assistance to the Court. Plaintiffs' pleading fails to confront the facts presented by Defendant, and provides no legal memorandum opposing Defendants' motion. Without characterizing Plaintiffs' response, it simply overlooks the purpose and requirements of the summary judgment rule.

Rule 56(c)(2) requires that the non-moving party "shall include . . . a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." V.R.C.P. 56(c)(2) ("All material facts set forth in the statement required to be

---

prosecution of an alleged crime, Plaintiffs do not address how the State could be negligent in supervising elected State Attorneys whose complained-of actions qualify for prosecutorial immunity. See Muzzy v. State, 155 Vt. 279 (1990) (discussing the limits of prosecutorial immunity).

5

served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Kelly v. Town of Barnard, 155 Vt. 296 (1990). Therefore, pursuant to the Rule, Defendants' factual presentation is deemed admitted, leaving no factual dispute for the Court.

However, in light of Huminski v. Lavoie, 173 Vt. 517 (2001) (mem.), and because Plaintiffs' allegations involve important questions of sovereign immunity and qualified immunity, the Court will discuss the legal issues raised in Plaintiffs' allegations. Moreover, the Rule itself counsels caution in that although the adverse party may not rest on the allegations of its pleadings, summary judgment may be granted only "if appropriate." V.R.C.P. 56(e). Therefore, because the Court now decides that summary judgment for Defendants is appropriate as a matter of law, more thorough analysis is warranted on the issues presented.

### a. Claim Against the State

Plaintiffs' claim against the State is that it negligently trained, supervised, and failed to retire former Defendants Lavoie and Wright. Defendants argue alternatively that the State is entitled to sovereign immunity and that Plaintiffs have not, and cannot, establish a duty of care beyond that which is owed to the public at large.

The Court will take judicial notice of the fact that State's Attorney William Wright is an elected county official and his Deputies are appointed by him and serve at his pleasure. As Defendants point out, "the State has no oversight at all as to the manner in which they carry out their duties or whether they are retained or hired in their positions." (Def.'s Cross Motion for Summ. J. and Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. and in Support of Def.'s Cross Motion for Summ. J., at 8.) Nonetheless, Plaintiff presses ahead with his claims despite an

6

absence of any legal theory underlying his allegations.

The Vermont Supreme Court recognized the tort of negligent supervision in Brueckner v. Norwich Univ., 169 Vt. 118, 126-27 (1999), and noted that in order for a plaintiff to recover under the theory the plaintiff must establish the existence of a duty flowing from the principal through the agent. In Brueckner, the Court found such liability where a group of students were enlisted by the University to indoctrinate new students, and where the students carried out abusive activities against a new student under the supervision of the school's officials. Id.

In the context of State employees, the Court has also found direct liability against the State based on omissions by social workers where "the relevant statutory provisions create a duty on the part of SRS to assist a particular class of persons," and where persons in that class were harmed. Sabia v. State, 164 Vt. 293, 299 (1995); but see Sorge v. State, 171 Vt. 171 (2000) (no duty for SRS to protect member of general public from minor in foster care). In Sabia, the Court determined that the statutory duty found in 33 V.S.A. § 4915 was enough to establish a cognizable duty owing from the State to the persons sought to be protected by the statute. However, in order to find that the State has waived its immunity under 12 V.S.A. § 5601(a), a plaintiff's cause of action must also be "comparable to a recognized cause of action against a private entity." Andrew v. State, 165 Vt. 263, 265 (1996) (citing Denis Bail Bonds v. State, 159 Vt. 481, 486 (1993)). In Sabia, the Court found sufficient private analogs to SRS's care and protection of children to find that the State had waived immunity under 12 V.S.A. § 5601(a). Sabia, 164 Vt. at 302-06.

Although Plaintiffs have not provided the Court with any legal theory supporting their claims, the Court need not discuss the existence of a private analog here because although one

7

may arguably exist for a cause of action for negligent supervision, Plaintiffs have made no effort to establish the requisite threshold duty of care. See Sabia, 164 Vt. at 298 (quoting Denis Bail Bonds, 159 Vt. at 487) (under a private analog analysis the "threshold issue is whether the plaintiff's factual allegations satisfy the necessary elements of a cause of action against the State comparable to one that may be maintained against a private person'"); see also Sorge, 171 Vt. at 174 (quoting Fox v. Custis, 372 S.E.2d 373, 375 (Va. 1988)) (alterations in original) ("'In a negligence case, neither the issues of proximate cause nor the [sovereign] immunity defenses become germane until it has been established that a defendant owes to a plaintiff a duty of care that has been breached.'").

In Brueckner, the Court explained that "'[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the supervision of the activity.'" Brueckner, 169 Vt. at 126 (quoting Restatement (Second) of Agency § 213). The Court also noted that "'[l]iability exists only if all the requirements of an action of tort for negligence exist.'" Id. at 126-27. The threshold element for negligence is a duty of care. To find an elevated duty of care owing to members of the public from the State, four factors are considered:

> (1) whether a statute sets forth mandatory acts for the protection of a particular class of persons; (2) whether the government has knowledge that particular persons within that class are in danger; (3) whether those persons have relied on the government's representations or conduct; and (4) whether the government's failure to use due care would increase the risk of harm beyond what it was at the time the government acted or failed to act.

Johnson v. State, 165 Vt. 588, 588-89 (1996) (mem.) (quoting Sabia, 164 Vt. at 299).

Here, Plaintiffs have made no discernible effort to establish a duty owing from the State,

either based on statute or common law principles. Indeed, in none of Plaintiffs' filings on his own summary judgment motion, or in his response to Defendants' cross-motion do Plaintiffs even mention a duty of care. The Court will not mine the statutory or common law to make Plaintiffs' case for them, as it is their burden to make out a prima facie claim. Therefore, because Plaintiffs have not established the existence of a duty owed by the State beyond that which it owes to the public at large, summary judgment for Defendants is appropriate as a matter of law. See Poplaski v. Lamphere, 152 Vt. 251, 254-55 (1989) (quoting Celotex Corp. V. Cartrett, 477 U.S. 317, 322 (1986)) ("Summary judgment is mandated under the plain language of V.R.C.P. 56(c) where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to [his] case and on which [he] has the burden of proof at trial.").

### b. Claim against David Miner

Also remaining for the Court's consideration is Defendants' motion for summary judgment on Plaintiffs' claim against David Miner for tortious interference with a contractual relationship. Defendants argue in their motion that Miner is entitled to qualified immunity from suit as that doctrine is explained in Hudson v. Town of East Montpelier, 161 Vt. 170, 171 (1993). Defendants argue in the alternative that even if Miner were not entitled to qualified immunity, Plaintiffs have not alleged facts sufficient to satisfy the elements of the tort.[5] For purposes of

---

[5]In Williams v. Chittenden Trust Co., 145 Vt. 76, 80 (1984) (quoting Restatement (Second) of Torts § 766), the Court described the elements of the tort as follows:

One who intentionally and improperly interferes with the

9

this portion of Defendants' motion the Court relies on the facts presented in Miner's affidavit accompanying their cross-motion and response, as Plaintiffs have not controverted these facts with an opposing statement. See V.R.C.P. 56(c)(2).

Plaintiffs' claim of interference stems from the actions of David Miner while acting within the scope of his duties as a probation officer for the Vermont Department of Corrections. In 1997, Miner was responsible for the supervision of James Rowe and Donald Conley concerning their furlough agreements. (Def.'s Counter-statement of Material Facts and Statement of Material Facts Not in Dispute, at 5-7.) Both Conley and Rowe signed furlough agreements giving the Department of Corrections the authority to approve their employment

> performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting from the failure of the third person to perform the contract.

Id. Although the Court finds that Miner is entitled to qualified immunity, the Court also agrees with Defendants' argument that Plaintiff's claim must fail because the facts, even as alleged by Plaintiff, do not establish the existence of a contractual relationship in the first instance. Rather, Planitiffs' sole evidence concerning a contractual relationship is the assertion that Rowe and Conley had worked for Scott Huminski in the past. Plaintiffs have not contravened Defendants' showing with any further evidence concerning the existence of a contractual relationship between Plaintiffs and either Rowe or Conley. Therefore Plaintiff could not as a matter of law, on these un-controverted facts, make out a prima facie case of interference.

10

while on furlough.  (Id.)  Pursuant to the furlough agreements that Rowe and Conley signed, Miner did not approve either Rowe's or Conley's prospective employment with Plaintiff Scott Huminski at his business.  (Id.)  The stated reason for the disapproval was the fact that Plaintiff at that time had been charged criminally with obstruction of justice.  (Id.)  Plaintiff, in his complaint, alleged that Miner's refusal to approve employment for Rowe and Conley with Defendant constituted contractual interference.

The Vermont Supreme Court has stated that public officials are entitled to qualified immunity when they are "(1) acting during the course of their employment and acting . . . within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts."  Murray v. White, 155 Vt. 621, 627 (1991) (citing Levinsky v. Diamond, 151 Vt. 178, 185 (1989)).  The policy underlying the doctrine is an "attempt to balance redress for the wronged with the fact that public officials must be allowed the freedom necessary to perform their obligations."  Id. at 626.  Finally, the inquiry into an official's good faith is an objective one.  Id.

Here, there is no question based upon the available facts that Miner was acting within the scope of his duties when he denied approval for Rowe and Conley to work for Plaintiff.  The denial was pursuant to a signed agreement concerning the furlough arrangements for Rowe and Conley.  Because the Court accepts Defendants' statement of facts as admitted in the absence of any contradictory facts put forth by Plaintiffs, the Court cannot conclude that Miner's denial based on the reason given was not done in good faith.  In Levinsky v. Diamond, 151 Vt. 178 (1989), overruled on other grounds by Muzzy v. State, 155 Vt. 279 (1990), the Court discussed the nature of the objective inquiry into good faith, and noted that government officials carrying

11

out discretionary duties "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). Further, the reasonableness is measured "by reference to clearly established law." Id. Here, Plaintiffs presented no evidence to suggest that Miner even knew of an existing contract (or if one existed at all) between Plaintiff and either Rowe or Conley, and thus Miner's acts cannot be said to have been in violation of any clearly established constitutional or statutory right enjoyed by Plaintiffs. The agreements signed by Rowe and Conley expressly granted the Department of Corrections the authority to approve employment.

Finally, there can be little doubt that as a probation officer Miner had the discretionary authority to approve or deny a furloughee's prospective employment based upon facts known to him at the time about the prospective employer. Therefore, Miner's denial was a discretionary decision for which he had the authority to make. All of the foregoing discussion leads the Court to the conclusion that Miner is entitled to qualified immunity, and thus is immune from suit here.

### ORDER

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is **DENIED**, and Defendants' cross-motion for summary judgment is **GRANTED**.


Dated this _____ day of February, 2005, at Bennington, County of Bennington, Vermont.


                                                    _____

Karen R. Carroll
Presiding Judge