512 So.2d 1022 (1987)
Pat HARTLEY, Sheriff of Levy County, and Agricultural Excess and Surplus Insurance Company, Appellants,
v.
Susan FLOYD, As Personal Representative of the Estate of James Edward Floyd and On Behalf of the Estate, Susan Floyd and Kristin Floyd, Appellees.
No. BR-347.
District Court of Appeal of Florida, First District.
September 1, 1987.
*1023 Julius F. Parker, Jr., of Parker, Skelding, McVoy & Labasky, Tallahassee, for appellants.
Rodney D. McGalliard and Raymond F. Brady, of McGalliard, Mills & deMontmollin, Gainesville, for appellees.
THOMPSON, Judge.
This is an appeal from a final judgment in favor of the plaintiffs in a wrongful death action. We affirm.
James Floyd, the husband of appellee Susan Floyd and the father of appellee Kristin Floyd, drowned in the Gulf of Mexico off Cedar Key at approximately 5:00 p.m. on June 1, 1982. He and four others had set out from Cedar Key on May 29 in a 24 foot open fishing boat. The boat capsized during the early hours of May 30 and for approximately the next 60 hours Floyd and his companions kept afloat using life preservers and taking turns resting on the hull of the overturned boat. At some point during the ordeal Floyd suffered an ankle injury when part of the capsized boat began to break up. At around 5:00 p.m. on June 1st, less than one-half hour before a Coast Guard helicopter found and rescued the four survivors, Floyd lost the strength to keep his head above water and to cling to the boat. At the time of Floyd's death his wife was four and one-half months pregnant with Kristin, who is now four and one-half years old.
Prior to leaving their Gainesville home for the planned two-day fishing trip, Floyd told his wife to expect him back on the afternoon of May 31. When Floyd had not arrived home by midnight on the 31st his wife called the Levy County Sheriff's Office to request assistance in locating her husband. She made her first call to the sheriff's office at approximately 12:20 a.m. on June 1 and reported to Deputy Legler that Floyd and his friends were overdue from a fishing trip. She advised that they had been driving a blue Chevrolet Surburban truck and requested that the sheriff's office check the Cedar Key boat ramp to determine whether the Surburban and boat trailer were still there. The sheriff admits that Deputy Legler promised to have someone check the Cedar Key boat ramp, and that he did not do so. When Mrs. Floyd called back approximately 40 minutes later the deputy told her that the boat ramp had been checked and her husband's truck was not there. The sheriff also admits that based on Deputy Legler's representation that her husband's truck and trailer were no longer at the boat ramp, Mrs. Floyd assumed that the fishermen had returned safely to Cedar Key, trailered their boat, and were on their way home. The sheriff *1024 further admits that in reliance on the erroneous information Mrs. Floyd made no additional effort to locate her husband for approximately five hours. At around 5:45 a.m. and again at around 7:00 a.m., having heard no word concerning her husband and his friends, Mrs. Floyd called the sheriff's office only to be told again that the boat ramp had been checked and that her husband's truck and trailer were not there.
The sheriff did dispute Mrs. Floyd's allegation that Deputy Legler negligently failed to notify the Coast Guard of the overdue boat despite having promised to do so. According to Mrs. Floyd, Legler told her during her initial telephone call to the sheriff's office that in addition to having someone check the Cedar Key boat ramp, he would call the Coast Guard station in Yankeetown to report the missing boat and men. Although at trial Deputy Legler testified that he had in fact called the Coast Guard soon after receiving the first call from Mrs. Floyd, Mrs. Floyd's evidence tended to prove that Legler did not call the Coast Guard notwithstanding his promise that he would. The Coast Guardsman on duty at the time testified he received no such call and Coast Guard records reflected none. Mrs. Floyd testified and proved through telephone and Coast Guard records that at around 7:30 a.m. on June 1 she called the Coast Guard herself, and that shortly thereafter the Coast Guard, upon determining that Floyd's truck and boat trailer were still at the Cedar Key boat ramp, instituted its search.
The sheriff's primary contentions are that the trial court should have sustained his sovereign immunity defense because, first, the alleged negligence on the part of the sheriff's deputy involved an exercise of discretion and not a merely ministerial or operational activity and, second, because he owed no special duty to Mrs. Floyd different from his general duty to the public at large. Appellants are correct in asserting that a governmental entity cannot be held liable for discretionary, judgmental decisions negligently made by its police officers in the course of enforcing the law. Everton v. Willard, 468 So.2d 936 (Fla. 1985). However, they incorrectly contend that Everton is controlling in this case. The decision whether to comply with Mrs. Floyd's request that the sheriff's office determine if her husband's truck and trailer were still at the Cedar Key boat ramp was initially a discretionary judgmental decision for which there would be no liability if Deputy Legler had decided not to comply with the request and had so advised Mrs. Floyd. However, once he advised her that he would comply with her request to inspect the boat ramp and told her he would contact the Coast Guard, he had a duty to perform these tasks with reasonable care. His negligent failure to perform the tasks once he agreed to do so can be a basis for holding the sheriff liable. State, Department of Highway Safety v. Kropff, 491 So.2d 1252 (Fla. 3d DCA 1986); Padgett v. School Board of Escambia County, 395 So.2d 584 (Fla. 1st DCA 1981). Once Deputy Legler agreed to perform the tasks his actions thereafter ceased to be discretionary actions and became merely operational level activities which must be performed with reasonable care and for which there is no sovereign immunity.
The sheriff also argues that Everton holds that he is not liable for a citizen's injuries unless he owed the citizen some special and distinct duty beyond the general duty that he owes the public at large. While this is a correct statement of law it is not applicable to the facts in this case where notwithstanding the absence of any preexisting special duty to Mrs. Floyd, the sheriff's office agreed to perform certain activities at her request. Once again, having assumed the undertaking the sheriff's office had an obligation to carry it out with reasonable care. The sheriff's deputy negligently failed to perform the assumed responsibilities, and the sheriff can therefore be held liable for his negligence.
We find the remaining alleged errors assigned to be without merit.
AFFIRMED.
BOOTH and WENTWORTH, JJ., concur.