2011 VT 121

### Andrew V. Kennery, Administrator of the Estate of Gladys M. Kennery v. State of Vermont, Travis L. Valcourt, Francis J. LaBombard, III and Other Unknown Members of the Department of Public Safety

[38 A.3d 35]

No. 10-448

Present: Dooley, Johnson and Skoglund, JJ., and Toor and Bent, Supr. JJ., Specially Assigned

Opinion Filed November 23, 2011

46

*Thomas W. Costello* of *Thomas W. Costello, P.C.*, and *Timothy J. O'Connor, Jr.*, of *O'Connor Law Offices*, Brattleboro, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Mark J. Patane*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiff Andrew Kennery, on behalf of the estate of Gladys Kennery, appeals the decision of the Windham Superior Court granting the State of Vermont's motion for summary judgment on plaintiff's complaint alleging negligence, gross negligence, and civil rights violations against the State of Vermont, Vermont State Troopers Travis Valcourt and Francis LaBombard, III, and the Vermont Department of Public Safety (VDPS). Plaintiff's lawsuit stems from a "welfare check" — that is, a check to determine that a person is safe and secure — the troopers performed on plaintiff's decedent, Gladys Kennery. Gladys's daughter had requested that the troopers check on her elderly mother, but the troopers searched the wrong residence. Meanwhile, Gladys had collapsed in her backyard and was unable to get back up and reach shelter. Gladys was found the next morning and died twelve days later from hypothermia caused by prolonged exposure to the cold.

¶ 2. The superior court held that the State owed no duty of reasonable care in performing the welfare check, thereby defeating plaintiff's claims. We hold that the trial court erred in granting summary judgment to defendants. Genuine issues of material fact remain as to whether a duty of care was created under the Restatement (Second) of Torts § 324A based upon the State's undertaking to perform the welfare check and whether the troopers breached that duty such that the State is liable under the Vermont Tort Claims Act (VTCA). We also hold that the court erred in dismissing plaintiff's claim of gross negligence against Troopers Valcourt and LaBombard. Accordingly, we reverse and remand.

¶ 3. The following material facts are not in dispute. On March 15, 2007, Gladys Kennery, an elderly woman who lived alone in

Marlboro, Vermont, left her home for a doctor's appointment. Lorraine Kennery, Gladys's daughter, was concerned about her mother returning home safely because Gladys had previously fallen on the path from her garage to her house. Lorraine had therefore arranged a system wherein Gladys would call Lorraine each time she left and returned home. When her mother did not call after the appointment, Lorraine, who lives in White Plains, NY, called the VDPS at around 6:30 p.m. and requested that they check her mother's residence to be sure she arrived safely.

¶ 4. Troopers Valcourt and LaBombard received the welfare check assignment and at about 10:20 p.m. called Lorraine, speaking with her for five to ten minutes. Lorraine gave Trooper Valcourt the address of Gladys's house at 3902 Augur Hole Road and informed him that Gladys had previously fallen entering her house.[1] The troopers proceeded in cars. Trooper LaBombard allegedly knew that number 3902, an even-numbered home, should be on the right side of the road as he approached from Route 9 based on the common numbering practice. However, upon seeing a mailbox on the left side of the road with Gladys's house number on it, he pulled into the driveway adjacent to the mailbox, and Trooper Valcourt followed him. They proceeded to search the house directly across the road from Gladys's house. The troopers knocked on the door, walked completely around the house, and checked the garage. They found no one.

¶ 5. After searching for approximately twenty minutes, Trooper Valcourt called the dispatcher and requested that Lorraine be notified of the results. Valcourt then put out a "be on the lookout" bulletin for Gladys via general broadcast and requested that the Brattleboro Police Department search the Brattleboro Memorial Hospital parking lot for her car. Valcourt also called Brattleboro Memorial Hospital and Grace Cottage Hospital to inquire whether Gladys had been admitted, and he left a message for the VDPS day shift supervisor requesting that the welfare check remain open for follow-up by the next shift.

¶ 6. The next morning, a postal worker discovered Gladys lying on the back porch of her home. In fact, Gladys had fallen while

---

[1] The parties dispute the level of detail Lorraine provided to the VDPS. Plaintiff claims that Lorraine explained to Trooper Valcourt that the mailbox for the house was across the road from the driveway and that the driveway was on the right side of the road traveling north from Route 9. Plaintiff also maintains that Lorraine informed Valcourt of the location of a spare key.

walking from her car to her house upon returning from her appointment and had crawled up on the porch. Twelve days later, Gladys died at Brattleboro Memorial Hospital from hypothermia.

¶ 7. Plaintiff sued the State of Vermont, Troopers Valcourt and LaBombard, and the VDPS for negligence, gross negligence, and tortious infringement of Gladys's constitutional rights. Plaintiff alleged that the troopers' conduct in performing the welfare check was careless because they searched the wrong house, contrary to Lorraine's instructions, and that their actions amounted to gross negligence because they failed to take simple steps that would have revealed their error. Plaintiff claimed that the State could be found liable because the common law tort of negligence, as developed in § 324A of the Restatement (Second) of Torts, sets forth an applicable duty of care, and the troopers negligently breached that duty of care, such that he could sue the State under the Vermont Tort Claims Act (VTCA), 12 V.S.A. § 5601(a). Plaintiff further alleged that the troopers were grossly negligent and were individually liable for the damages caused by their conduct. Defendants moved for summary judgment on all claims.

¶ 8. The trial court granted summary judgment to defendants on all counts of plaintiff's complaint and dismissed it. On plaintiff's primary claim of negligence against the State of Vermont, the court held that the plaintiff failed to show an applicable duty of care, relying on our recent decision in *Kane v. Lamothe*, 2007 VT 91, 182 Vt. 241, 936 A.2d 1303, and specifically emphasizing the absence of a statutory duty. The court also rejected finding a duty under the Vermont emergency medical care or "good Samaritan" statute, 12 V.S.A. § 519, or under a common law theory based on § 324 of the Restatement (Second) of Torts (as opposed to § 324A). Because there was no duty, the court held that plaintiff could not establish that the troopers were grossly negligent, adding that it would not find a valid complaint of gross negligence even if there were a duty. The court dismissed the Civil Rights Act complaint under 42 U.S.C. § 1983, primarily because plaintiff would have to show conduct more culpable than gross negligence and could not do so. Because these holdings resulted in dismissal of the case, the court did not reach the State's argument that the troopers were protected by qualified immunity or that the VTCA does not

allow liability because the officers were performing a "discretionary" function. See 12 V.S.A. § 5601(e)(1). This appeal followed.[2]

¶ 9. The central issues for our consideration are whether, as a matter of law, the State owed a duty of reasonable care in performing the welfare check, and if so, whether the doctrine of sovereign immunity bars plaintiff's tort suit against the State. We must also address whether the trial court properly dismissed plaintiff's gross negligence claim against Troopers Valcourt and LaBombard on summary judgment. We hold that the trial court failed to address the existence of a common law duty of care under the Restatement (Second) of Torts § 324A and consequently did not properly address sovereign immunity under § 5601(a) and § 5601(e). Therefore, we reverse summary judgment on plaintiff's negligence claim against the State. We further hold that summary judgment on plaintiff's gross negligence claim against the troopers is inappropriate, and that qualified immunity is not a bar to their liability.

¶ 10. We review an award of summary judgment de novo. Summary judgment is appropriate if, with facts taken as alleged by the nonmoving party and reasonable doubts and inferences resolved in favor of the nonmoving party, "there is no genuine issue as to any material fact" and "any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3); *Cassani v. Hale*, 2010 VT 8, ¶ 20, 187 Vt. 336, 993 A.2d 422.

¶ 11. The threshold question for both plaintiff's negligence and gross negligence claims is whether the troopers owed Gladys Kennery a duty to perform the welfare check with due care. We agree with plaintiff that he raised a valid claim that the troopers had a common law duty of care under Restatement (Second) of Torts § 324A and that the undisputed facts do not resolve such a claim against him.

■ ■ ¶ 12. The Restatement (Second) of Torts § 324A (1965) provides as follows:

---

[2] Plaintiff has not contested on appeal the dismissal of the Civil Rights Act count, and we do not consider it. As developed in the text, the State urges that if we find a duty and the general applicability of the Vermont Tort Claims Act, we should nevertheless affirm because the officers were performing a discretionary function. The State also argues that, if we rule that summary judgment was improper on the claim of gross negligence, we should nevertheless affirm the dismissal of that count because the troopers are protected by qualified immunity.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

In this case, plaintiff alleged that the troopers expressly undertook to render the welfare check services to Lorraine[3] (the other), that they recognized or should have recognized that the welfare check services were necessary for the protection of Gladys (the third person), that they did not exercise reasonable care to protect their undertaking, and that either their failure to exercise reasonable care increased the risk of harm because Gladys remained outside overnight (subsection a) or Gladys's harm was suffered because Lorraine relied upon their representation that they checked the house and Gladys was not there (subsection c).

▇ ¶ 13. Vermont formally adopted § 324A in *Derosia v. Liberty Mutual Insurance Co.*, 155 Vt. 178, 182-83, 583 A.2d 881, 883 (1990). In *Derosia,* we held that a private insurance carrier may be liable under § 324A for failure to inspect an employer's workplace if the insurer undertook to render a specific service necessary for the protection of employees and thereby induced reliance, or the insurer's lack of reasonable care increased the risk of harm. *Id.* at 187, 583 A.2d at 886. We have since applied § 324A in a number of cases. See, e.g., *Schaad v. Bell Atl.*

---

[3] Section 324A applies where the undertaking is assumed "gratuitously or for consideration." These terms were added to the section to contrast with § 324 for which "the gratuitous nature of the services is an important factor in determining whether the actor has exercised reasonable care." Restatement (Second) of Torts § 324 cmt. d; see *id.* § 324A cmt. c. The language is not meant to restrict § 324A's application from undertakings that otherwise fit within the section. Thus, it does not matter to plaintiff's theory whether the undertaking was seen here as gratuitous or for consideration.

*NYNEX Mobile, Inc.*, 173 Vt. 629, 631, 800 A.2d 455, 458 (2002) (mem.) (affirming decision that plaintiff's § 324A claim would not be submitted to jury because it was not supported by sufficient evidence); *Andrew v. State*, 165 Vt. 252, 256-60, 682 A.2d 1387, 1390-92 (1996) (determining that State's occupational safety inspection program did not create undertaking to trigger § 324A); *O'Brien v. Island Corp.*, 157 Vt. 135, 137-38, 596 A.2d 1295, 1296-97 (1991) (affirming summary judgment dismissing § 324A claim due to lack of undertaking and lack of reliance); cf. also *Sabia v. State*, 164 Vt. 293, 304-05, 669 A.2d 1187, 1195 (1995) (recognizing analogy between § 324 and negligence in pursuing child abuse reports).

■■ ¶ 14. As outlined in the Restatement and quoted above, § 324A requires a threshold showing that there existed an undertaking to render services for another for the protection of a third party and, under § 324A(a), a showing that this undertaking increased the risk of harm or, under § 324A(c), a showing that harm was suffered because of reliance on the undertaking. Restatement (Second) of Torts § 324A; see also *Andrew*, 165 Vt. at 256, 682 A.2d at 1390 (outlining § 324A). We noted in *Sabia* that "very little action" on the part of the defendants is required to constitute an undertaking, and suggested that a promise to do something may be sufficient. 164 Vt. at 303, 669 A.2d at 1194 (citing *O'Brien*, 157 Vt. at 137, 596 A.2d at 1296). Here, VDPS and the troopers expressly undertook to provide the welfare check, not only by promising to do so, but also by following up on their promise, taking concrete actions to perform the welfare check, and following up on their performance with Lorraine Kennery. We therefore hold that the troopers' acts satisfied the first element of a duty under § 324A.

¶ 15. The same is true for plaintiff's allegation of negligence. Plaintiff claims that Lorraine's directions included numerous details that would have revealed to the troopers that they were searching the wrong house, such as the location of Gladys's hidden key, that Gladys's home mailbox was on the opposite side of the street from her house, and that the house was on the right side coming north from Route 9. The troopers also admittedly knew that even-numbered homes on this street were located on the side of the street opposite the side they searched. Based on these and other assertions, if it is established that the troopers did receive Lorraine Kennery's instructions, and ignored those

instructions and their own experience, a reasonable trier of fact could conclude that they did not exercise due care in performing the welfare check.

¶ 16. Should the jury find that the troopers failed to exercise reasonable care, the next question of material fact is whether this failure increased the risk of harm (§ 324A(a)) or whether the harm suffered was due to Lorraine's reliance upon VDPS and the troopers to properly execute the welfare check (§ 324A(c)). We hold that a reasonable jury could find that the troopers' deviations from a standard of reasonable care in performing the welfare check could have increased the risk of severe hypothermia and death because, had they properly performed the check, the troopers could have found Gladys much earlier, limiting her exposure to the cold and thus possibly rescuing her before she suffered hypothermia, or before the hypothermia became life-threatening. A jury could also find that Gladys suffered harm because of Lorraine's reliance on what she believed to be the troopers' competent completion of the welfare check. Lorraine Kennery claims that her reliance upon VDPS and Troopers Valcourt and LaBombard's report prevented her from personally checking on her mother, instead shifting her efforts towards determining whether Gladys was in a hospital or had suffered a car accident. Lorraine stated: "To me, they were the only two possibilities. The state police went to the house. She wasn't home. That was it." Had Lorraine not relied on the troopers' report and personally checked her mother's home, she might have found Gladys much earlier than the postman, thus possibly limiting or preventing Gladys's hypothermia. Because there are genuine issues of material fact that, if resolved in favor of the plaintiff, could support the elements necessary to conclude that the troopers violated a duty of reasonable care owed under § 324A, summary judgment is inappropriate.

¶ 17. Although the facts of this case are unusual, there are a number of decisions from other jurisdictions that find a duty of care in similar circumstances. The most important is the leading United States Supreme Court case of *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). Although the facts of *Indian Towing* are quite different, the principle is the same. The case arose in connection with lighthouses that the federal government constructed and operated on the lower Mississippi River. Plaintiff owned a tug that was towing a barge loaded with cargo when it

ran aground because one of the lighthouses failed to work, allegedly because of the negligence of the Coast Guard in maintaining the lighthouse. In finding a duty of care, the Supreme Court invoked "hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Id.* at 64-65. The Court ruled that while the Coast Guard was not required to offer lighthouse services, assuming the responsibility of providing such service created a duty of reasonable care in their maintenance:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light . . . and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

*Id.* at 69. Under the common law in Vermont, as in *Indian Towing*, once VDPS undertook to provide welfare checks, it assumed a duty of due care in their performance.

¶ 18. Another important case is the recent decision of the Florida Supreme Court in *Wallace v. Dean*, 3 So. 3d 1035 (Fla. 2009), a case with some factual similarities to this one. The case arose out of a welfare check — called a safety check — by two sheriff's deputies after a daughter could not reach her mother at home by telephone. The daughter called the next-door neighbor, who, after getting no response to knocks, called 911. In response, the deputies found the mother unconscious and were unable to wake her. Nevertheless, they refused the neighbor's request to have the mother taken to the hospital, insisting that the mother was just sleeping. At the insistence of the neighbor, mother was taken to the hospital the next day where she died without regaining consciousness.

¶ 19. The Florida court found a common law duty of care under Restatement (Second) of Torts §§ 323, 324, 324A, employing essentially the same analysis we engaged in above. The court's analysis was:

Here, the allegations of the complaint support the conclusion that the Sheriff's deputies affirmatively and specifically undertook to provide aid to [mother] and then provided repeated assurances upon which [the] neighbor and daughter relied, which thereby increased the risk of harm that [mother] faced. . . . As alleged in the complaint, the conduct of these deputies placed [mother] in a readily recognizable zone of risk. . . . This alleged behavior satisfies the requirements of the undertaker's doctrine because the deputies, in a position of authority, increased the risk of harm that the decedent faced by inducing third parties — who would have otherwise rendered further aid (and actually requested that the deputies provide additional assistance, but were rebuffed) — to forebear from doing so.

*Id.* at 1052.

¶ 20. The court in *Wallace*, in turn, relied upon a decision by the Florida District Court of Appeal that involves facts most similar to those in this case. In *Hartley v. Floyd*, 512 So. 2d 1022, 1023 (Fla. Dist. Ct. App. 1987), a wife whose husband had not returned on time from a fishing trip requested assistance from the sheriff's office. At the wife's request, a deputy promised to have someone check the boat access ramp to determine whether the truck and boat trailer were still there and to notify the Coast Guard of a missing boat and fishermen. Approximately forty minutes later, the deputy reported to the wife that the boat access had been checked and the truck and trailer were not there and that the Coast Guard was notified. These representations were false, but delayed rescue operations for five hours. In fact, the fishing boat had capsized, and the fishermen were clinging to it. The husband drowned about half an hour before he would have been rescued. In finding a duty, the District Court of Appeal reasoned:

The decision whether to comply with [wife's] request that the sheriff's office determine if her husband's truck and trailer were still at the . . . boat ramp was initially a discretionary judgmental decision for which there would be no liability if [the deputy] had decided not to comply with the request and had so advised [wife]. However, once he advised her that he would comply with her

request to inspect the boat ramp and told her he would contact the Coast Guard, he had a duty to perform these tasks with reasonable care. His negligent failure to perform the tasks once he agreed to do so can be a basis for holding the sheriff liable.

*Id.* at 1024.

¶ 21. Having concluded that plaintiff made a sufficient showing to withstand summary judgment on the presence of a duty of care, and breach of that duty, we must next address whether the State has waived its sovereign immunity to allow plaintiff to go forward on his claim. To address this question, we must examine the Vermont Tort Claims Act (VTCA), 12 V.S.A. § 5601 et seq., the vehicle by which the Legislature has adopted a limited waiver of sovereign immunity. According to § 5602, a plaintiff who has a cause of action against an employee of the State for acts or omissions within the scope of employment has an exclusive right of action against the State of Vermont, and "no such action may be maintained against the employee" except for gross negligence or willful misconduct. 12 V.S.A. § 5602(a)-(b). Thus, plaintiff's negligence claim based on the troopers' acts must lie in a claim against the State.

¶ 22. The central provision of the VTCA provides: "The state of Vermont shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant . . . ." 12 V.S.A. § 5601(a). The language precisely encompasses plaintiff's claim. Plaintiff relies upon a common law duty of care that does not depend upon whether the alleged tortfeasor is a public employee or a private individual. Plaintiff would have the same cause of action if the daughter had asked a friend to perform the welfare check and the friend's actions were the same as those of the troopers in this case. Thus, plaintiff's claim asserts liability against the State "under the same circumstances, in the same manner and to the same extent as a private person would be liable."

¶ 23. Despite the statutory language, the State argues, and the trial court apparently agreed, that plaintiff cannot have a claim against the State under the VTCA unless it meets the four-part

test from *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993). This four-part test is used to determine whether a governmental body has undertaken a special duty of care toward certain persons, including the plaintiff. *Id.* We have used this test in numerous cases dealing with alleged breaches of the governmental obligation of a state employee. See *Sabia*, 164 Vt. at 298-300, 668 A.2d at 1191-92 (finding statutory duty of due care under four-part test); *Kane*, 2007 VT 91, ¶¶ 8-9 (finding no statutory duty under four-part test).

¶ 24. In essence, the State's argument is that it cannot be held liable based on a common law duty of care. The State's argument focuses on the first prong of the four-part test: whether a statute or ordinance sets forth mandatory acts for the protection of a particular class of persons, rather than the public as a whole. *Denis Bail Bonds*, 159 Vt. at 487, 622 A.2d at 499. Because there is no applicable statute or ordinance in this case, the State contends, that prong cannot be met.

¶ 25. The first prong is present in the four-part test because plaintiff in *Denis Bail Bonds*, and in every state employee duty case thereafter, was asserting a duty based on the governmental obligation of the alleged tortfeasor and the breach of that obligation. This is the first case since *Denis Bail Bonds* in which the plaintiff is relying upon a common law duty for which it is irrelevant that the employer of the tortfeasor is the government.

¶ 26. ■ ■ The significance of the source of duty is apparent from the discussion in *Denis Bail Bonds* of the policies reflected in the similar Federal Tort Claims Act (FTCA):

> The waiver is primarily directed at the "ordinary common-law torts." *Dalehite v. United States*, 346 U.S. 15, 28 (1953). By maintaining a link to private causes of action, this approach serves to prevent the government's waiver of sovereign immunity from encompassing purely "governmental" functions. Its effect, therefore, "is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities." *Feres v. United States*, 340 U.S. 135, 142 (1950).

*Id.* at 485-86, 622 A.2d at 498. We went on to state that the relevant analytical approaches of the FTCA and the VTCA are the

same. *Id.* at 486, 622 A.2d at 498. Thus, like the FTCA, the primary purpose of the VTCA is to waive sovereign immunity for recognized causes of action, particularly for common law torts.

¶ 27. State employees, like members of the population as a whole, may commit common law torts for which the source of their employment is unconnected to the duty of care. For example, a state employee may, while driving to a meeting, collide with another vehicle causing personal injury and property damage because of negligent operation. This is exactly the kind of circumstance that the Legislature intended be covered by the waiver of sovereign immunity, but under the State's argument is covered only if the tortfeasor is discharging a statutory responsibility for the protection of specific individuals. Except to show that the tortfeasor was acting within the scope of his or her employment at the time of the accident, the nature of the tortfeasor's duties as a state employee is irrelevant to the duty of care or to the State's waiver of sovereign immunity.

¶ 28. In the case before us, the common law duty of care directly addresses the special obligation VDPS assumed to beneficiaries of welfare checks and the special obligation when the responsibility of a welfare check was accepted in the individual case. The fact that no statute commanded this undertaking of responsibility does not mean that no duty existed. The presence of a common law duty of care is sufficient to meet the requirements of VTCA, § 5601(a).

¶ 29. The State makes a related argument that plaintiff has failed to demonstrate a private analog for the VDPS welfare check and therefore cannot show a duty of care that meets the requirement of the waiver language in § 5601. The requirement for a private analog also arose in *Denis Bail Bonds*, 159 Vt. at 486, 622 A.2d at 498, as a way for the plaintiff to show that the duty of the tortfeasor arose "under the same circumstances, in the same manner and to the same extent as a private person," 12 V.S.A. § 5601(a), even though the duty arose from the legal obligation of the tortfeasor as a governmental employee or official. Because the duty of care in this case arises from the common law, and is the same whether or not the tortfeasor is a private individual or a public employee, the requirement is inapplicable. Put another way, we have held that a private analog is an

acceptable substitute for a private duty, but hardly necessary where plaintiff is relying on a private duty.

¶ 30. Having concluded that plaintiff raised a duty of care such that this action is covered by the waiver of sovereign immunity contained within the VTCA, 12 V.S.A. § 5601(a), we turn to the State's claim that an exception to the waiver of sovereign immunity contained in 12 V.S.A. § 5601(e)(1), the discretionary function exception, is applicable here. Although the trial court did not rule on this basis, the State has consistently argued this basis for dismissal of the complaint and will do so on remand if we do not resolve it here. Because it is a question of law which we address de novo, we address it here.

■■■ ¶ 31. The discretionary function exception makes the § 5601(a) waiver of sovereign immunity inapplicable to "[a]ny claim . . . based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused." 12 V.S.A. § 5601(e)(1). The purpose of this exception is to ensure that the courts do not "pass[ ] judgment on legislative or administrative policy decisions through tort law." *Sabia*, 164 Vt. at 307, 669 A.2d at 1197. The State argues that plaintiff's claims are barred by the discretionary function exception because the troopers made discretionary decisions about the manner in which they conducted the welfare check.

■■■ ■■■ ¶ 32. In determining whether a claim is barred by the discretionary function exception, we use the two-part test from *United States v. Gaubert*, 499 U.S. 315, 324 (1991). See *Searles v. Agency of Transp.*, 171 Vt. 562, 563-64, 762 A.2d 812, 813-15 (2000) (mem.) (adopting *Gaubert* test). Under the first prong of the test, a court must determine whether a statute, regulation, or policy mandates certain acts, or whether performance of a duty involves an element of judgment or choice. *Searles*, 171 Vt. at 563, 462 A.2d at 813-14. If a court determines that acts involve an element of judgment or choice, it must then decide " 'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " *Id.* at 563, 762 A.2d at 814 (quoting *Gaubert*, 499 U.S. at 322-23). "[T]he exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (quoting *Berkovitz v.*

*United States,* 486 U.S. 531, 537 (1988)) (internal quotation marks omitted). However, "when a statute, regulation, or policy vests discretion in the [government] employee, it is presumed that the employee's acts are grounded in [public] policy when exercising that discretion." *Johnson v. Agency of Transp.,* 2006 VT 37, ¶ 6, 180 Vt. 493, 904 A.2d 1060 (mem.). The analysis focuses on whether the actions taken by the government employee are " 'susceptible to policy analysis,' " not on an employee's " 'subjective intent in exercising the discretion conferred by . . . regulation.' " *Id.* (quoting *Gaubert,* 499 U.S. at 325).

■ ¶ 33. Because even ministerial acts involve some element of discretion, we focus on a case-by-case basis on the underlying policies for immunity, rather than a bright-line rule. See *Hudson v. Town of East Montpelier,* 161 Vt. 168, 175, 638 A.2d 561, 565-66 (1993) (advocating case-by-case analysis of whether act is discretionary under doctrine of qualified immunity, and recognizing that even if some discretion is required, actions may not be discretionary for purposes of qualified immunity); see also *Johnson v. State,* 165 Vt. 588, 589-90, 682 A.2d 961, 963 (1996) (mem.) (reiterating use of case-by-case analysis and rejecting literal definitional approach in analyzing whether act is discretionary or ministerial). "[P]laintiff's role in a motion for summary judgment is to allege facts sufficient to support a finding that the challenged act is not the *type of act* protected by the exception." *Johnson v. Agency of Transp.,* 2006 VT 37, ¶ 6.

¶ 34. ■ The essence of the State's argument is that, "[a]s it requires substantial judgment in terms of means and manner, the act of investigation is a discretionary one." *Amy's Enters. v. Sorrell,* 174 Vt. 623, 625, 817 A.2d 612, 617 (2002) (mem.). Thus, the State argues, the judgments of law enforcement officers "necessarily involve consideration of many factors, including the allocation of time and resources, dangers to persons, concerns over the rights of suspects, and the credibility of witnesses." The question before us, however, is not whether the performance of a welfare check requires the exercise of discretion, but whether the exercise of discretion is based on considerations of public policy. As the United States Supreme Court explained in *Gaubert*:

There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function

exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

499 U.S. at 325 n.7; see also *Coulthurst v. United States*, 214 F.3d 106, 110 (2d Cir. 2000) (distinguishing discretionary acts in general from discretionary acts based on public policy). We have acknowledged difficulty in finding the line drawn in *Gaubert* and "whether it adequately protects the interests of citizens injured by the acts of government employees." *Johnson*, 2006 VT 37, ¶ 13.

¶ 35. We have no doubt that the VDPS decision to perform or not perform welfare checks is protected by the discretionary function exception. Further, state police officers must have discretion to decide whether to respond to a particular request in light of all the demands upon their on-duty time. See *Hartley*, 512 So. 2d at 1024. The facts of this case indicate that the troopers were able to respond to the request for a welfare check four hours after it was received. If plaintiff's claim were that the troopers waited too long in responding and the delay caused the result, we would similarly hold that the State must also be protected by the discretionary function exception because VDPS must be protected in its ability to allocate limited trooper time to competing demands. See *Lane v. State*, 174 Vt. 219, 229, 811 A.2d 190, 198 (2002) (finding that the State's decisions on "how to best allocate employees and resources to combat severe winter weather conditions" are protected by discretionary function exception).

¶ 36. But this case does not involve competing considerations based upon policy assessments. See *Morway v. Trombly*, 173 Vt. 266, 273, 789 A.2d 965, 970 (2001) (explaining in the context of municipal snow plow operator that, while angle of plow and speed of truck might be discretionary decisions, they did not involve policy considerations such as allocation of resources that would warrant protection from judicial oversight). The discretionary activity at issue was to apply the information given the officers to search the right house. We see no public policy analysis

in this activity. Thus, we cannot conclude that the actions that are at the center of plaintiff's claims are protected by the discretionary function exemption.

¶ 37. In reaching our conclusion, we are persuaded by the similar analysis in *Carter v. United States*, 725 F. Supp. 2d 346 (E.D.N.Y. 2010), decided under the identical discretionary function exception in the FTCA. In *Carter*, federal agents relied upon the Postal Inspection Service — the Post Office's address verification service — to provide a home address for Kinte Carter, who was to be arrested for activities as a drug gang member. The Service identified an address in the area where Carter was thought to reside. In fact, the Service knew only that the address contained residents with the last name of Carter and had no indication that Kinte Carter resided there. By negligent mistake, the Service reported the address as that of Kinte Carter. In early morning hours, the federal agents invaded the house only to determine that Kinte Carter did not live there and was not known by the Carter family who did live there.

¶ 38. In a suit for damages under the FTCA, the court ruled that the discretionary function exception did not bar plaintiffs' claims. *Id.* at 355. It noted that the decision to provide address verification services, as well as the "choice of methods and procedures" in determining addresses, were protected by the discretionary function exception. *Id.* The error, however, was caused by a mistake of one worker in transcribing research notes. While there was some discretion involved in transcribing the notes, the court noted that the "choices were not policy based." *Id.* Instead, the error was caused by "simple carelessness, for which the DFE does not foreclose liability." *Id.* In the court's view, to hold otherwise would mean that the discretionary function exception would eat up the waiver of sovereign immunity " 'because almost every act involves some modicum of discretion regarding the manner in which one carries it out.' " *Id.* (quoting *Coulthurst*, 214 F.3d at 110).

¶ 39. The alleged negligence in this case is on the same level as that in *Carter* and for the same reason should not be covered by the discretionary function exception. We agree with the observation in *Carter* that if we were to find that the discretionary function exception applies here, there would be very little conduct left that could be the basis for liability under the VTCA.

¶ 40. Having decided that plaintiff's main liability claim is covered by the VTCA and not excluded by the discretionary function exception, we turn now to plaintiff's direct claims against Troopers Valcourt and LaBombard. Under the VTCA, the troopers can be personally liable to plaintiff if their conduct involved gross negligence or willful misconduct. 12 V.S.A. § 5602(b). Plaintiff has alleged that each of the troopers was grossly negligent in searching for Gladys at the wrong house.

¶ 41. Gross negligence is negligence that is " 'more than an error of judgment' "; it is the failure to exercise " 'even a slight degree of care' " owed to another. *Kane*, 2007 VT 91, ¶ 12 (quoting *Hardingham v. United Counseling Serv. of Bennington Cnty.*, 164 Vt. 478, 481, 672 A.2d 480, 482 (1995), and *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 220, 790 A.2d 408, 423 (2001)). Gross negligence is ordinarily a question of fact for the jury, and an allegation of gross negligence may be dismissed by the court only if reasonable minds cannot differ. *Id.* ¶ 12. We have previously recognized in this context that "[e]ach case turns almost entirely on its own peculiar factual situation." *Langdon-Davies v. Stalbird*, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960).

¶ 42. We conclude that this is the type of case that fits within the general rule that the determination of whether a defendant was grossly negligent is for the jury. Under plaintiff's version of the facts, the troopers made multiple errors in judgment in performing a straightforward task. These errors arose in a context where the need for particular care was great. Thus, reasonable minds could differ on what level of negligence to assign to the troopers' conduct.[4]

---

[4] Contrary to the dissent, we do not conclude that this case is controlled by *Kane v. Lamothe*, 2007 VT 91. In *Kane*, an officer exercised his professional judgment not to arrest a domestic violence perpetrator, and the victim alleged that that omission was gross negligence. We concluded that even if the officer should have more thoroughly investigated the circumstances and exercised his discretion differently, the omission did not rise to gross negligence as a matter of law. The main difference between this case and *Kane* lies in the nature and extent of the discretion involved. *Kane* involved the professional discretion, based upon training and experience, to determine whether arrest was the right remedy to the circumstances the officer encountered. This case involves the very limited discretion to find the right house based on the instructions given by decedent's daughter. We cannot conclude that the discretion in this case precludes a jury finding of gross negligence.

¶ 43. The State argues that even if Troopers Valcourt and Lombard are subject to a claim of gross negligence, they are protected from suit by the doctrine of qualified immunity. In Vermont, we recognize two forms of immunity for government employees: absolute immunity, which applies only to the State's highest officers and judges for certain actions closely associated with judicial or prosecutorial activities, and qualified immunity, which applies to other governmental actions so long as they are within the course of employment, within the scope of the employee's authority, made in good faith, and discretionary. *Czechorowski v. State*, 2005 VT 40, ¶ 10, 178 Vt. 524, 872 A.2d 883 (mem.). The State argues that the troopers in this case met all of the above requirements for qualified immunity. Unquestionably, the troopers' acts occurred in the course of their employment and within the scope of their authority, and the evidence before us does not indicate bad faith.

¶ 44. We cannot conclude, however, that the troopers' acts were discretionary, as we have defined that element of qualified immunity. In essence, we have defined discretionary as the same as those actions that are exempt from liability under the VTCA because they are protected by the discretionary function exception. See *Hudson*, 161 Vt. at 175, 638 A.2d at 565-66. That is, qualified immunity will prevent liability for discretionary activities but only if the discretion involves weighing of public policy considerations that would warrant providing a shield against liability. See *id.*; *Morway*, 173 Vt. at 272-74, 789 A.2d at 970-71. For the same reason we have held that the State is not protected against plaintiff's claim of negligence by the discretionary function exception of the VTCA, we hold that the individual troopers are not protected against the gross negligence claims by qualified immunity.

¶ 45. Because we hold in favor of plaintiff and reverse the trial court on the basis of the issues above, we decline to reach plaintiff's additional arguments.

*Reversed and remanded for further proceedings consistent with this opinion.*

¶ 46. **Toor, Supr. J., Specially Assigned,** concurring in part and dissenting in part. I concur with the Court's ruling that the Restatement (Second) of Torts § 324A is applicable here, and that the discretionary function doctrine is inapplicable on the specific

facts of this case. Thus, I agree with the remand for a trial on the claims against the State. However, I disagree with the majority's view that a claim of gross negligence can survive here against the individual troopers.

¶ 47. It is true that the line between ordinary negligence and gross negligence is often a hard one to draw, and thus is often one for the jury. This case, however, involves no such hard lines. A jury may well find that the troopers were negligent if the plaintiff's claims as to the detailed directions to the house are established at trial, but even with those facts this is a case of ordinary negligence. Gross negligence has been defined in this state as follows:

> Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. Gross negligence is equivalent to the failure to exercise even a slight degree of care. . . . It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others.

*Shaw v. Moore,* 104 Vt. 529, 531, 162 A. 373, 374 (1932). It "requires more than an error of judgment, momentary inattention, or loss of presence of mind." *State v. Carlin,* 2010 VT 79, ¶ 6, 188 Vt. 602, 9 A.3d 312 (mem.) (quotations omitted). It is "an indifference to the duty owed to another." *Hardingham v. United Counseling Serv. of Bennington Cnty.,* 164 Vt. 478, 481, 672 A.2d 480, 482 (1995) (quotations and alterations omitted).

¶ 48. Trial courts may dismiss or grant summary judgment on claims for gross negligence when the facts establish nothing more than ordinary negligence. For example, "a driver's momentary inattention, by itself, is insufficient to warrant a finding of gross negligence." *Carlin,* 2010 VT 79, ¶ 9. Likewise, "falling asleep at the wheel does not, in and of itself, constitute gross negligence." *State v. Valyou,* 2006 VT 105, ¶ 6, 180 Vt. 627, 910 A.2d 922 (mem.). Absent more, these sorts of acts involving mistakes or a lack of attention are ordinary negligence as a matter of law and need not be submitted to a jury.

¶ 49. This Court has affirmed the dismissal of a gross negligence claim in an analogous matter. The case involved a trooper's

failure to arrest the plaintiff's boyfriend after an incident of domestic assault, leading to a subsequent assault after the trooper left the residence. The Court affirmed the trial court's ruling that "the facts alleged — the trooper responded to a report of domestic violence, found a bruised and bleeding victim, interviewed her within earshot of her boyfriend, and left without arresting the boyfriend — did not rise to the level of gross negligence as a matter of law." *Kane v. Lamothe*, 2007 VT 91, ¶ 12, 182 Vt. 241, 936 A.2d 1303. The Court concluded that although "the trooper might have better investigated the matter . . . , plaintiff nevertheless failed to set forth a wholesale absence of care or indifference to duty owed to her, as is necessary to state a viable claim for gross negligence." *Id.* ¶ 13.

¶ 50. The same is true here. The facts alleged in this case would establish an error of judgment, but not a "wholesale absence of care or indifference to duty." *Id.* Surely the troopers exercised at least "a slight degree of care" by going to and investigating the property around the home that they thought to be the decedent's. *Carlin*, 2010 VT 79, ¶ 6. Their acts cannot fairly be characterized as a "heedless and palpable violation of legal duty." *Shaw*, 104 Vt. at 531, 162 A. at 374. "[S]imple incompetence," which is essentially what is alleged here, does not rise to the level of gross negligence. *Powers v. Office of Child Support*, 173 Vt. 390, 399, 795 A.2d 1259, 1266 (2002); see also *Fortunati v. Campagne*, 681 F. Supp. 2d 528, 545 (D. Vt. 2009) ("[Q]uestionable decisions [by troopers and] perhaps preferable alternatives that were not pursued . . . [do] not amount to the wholesale abdication of care required [to show] gross negligence [under Vermont law].").

¶ 51. To show gross negligence here would require significantly more extreme facts — such as, for example, the troopers' utter failure to go to the house despite claiming to have done so. The facts alleged just do not establish anything more than ordinary negligence. I would therefore affirm the trial court's entry of judgment for the defendants on all claims against the individual troopers.

¶ 52. I am authorized to state that Judge Bent joins this concurrence and dissent.