Filed 06/13/24

| | | |
|---|---|---|
| **VERMONT SUPERIOR COURT**<br>Orleans Unit<br>247 Main Street<br>Newport VT  05855<br>802-334-3305<br>www.vermontjudiciary.org |  | **CIVIL DIVISION**<br>Case No. 63-3-16 Oscv |

---

| **Dane vs. Royer et al** |
|---|

---

## ENTRY REGARDING MOTION

Title:       Motion for Summary Judgment  (Motion: 34)
Filer:       Lindsay Browning
Filed Date:  January 31, 2024

The motion is DENIED.

This is the third effort by Defendant Royer to dismiss claims against him concerning a logging incident along Interstate I-91 that occurred in March of 2013.  Defendant seeks summary judgment on four issues: (1) whether Plaintiff's gross negligence claims can be resolved as a matter of law; (2) whether Plaintiff's comparative negligence is greater than Defendant's barring recovery as a matter of law; (3) whether Defendant's negligence is a non-delegable safe-workplace duty that belongs to the employer; and (4) whether Defendant is entitled to qualified immunity.  These are the exact same issues that Defendant raised in its previous motion for summary judgment, which the Court denied on August 24, 2020.  While Defendant correctly points out that a denial of summary judgment may be revisited and does not constitute a final judgment,[1] there is nothing in Defendant's most recent iteration that merits a different outcome from the prior decision.

### Background Facts

The facts of this case were recited in detail in both this Court's prior decision dated August 24, 2024 and its denial of Defendant's motion to dismiss dated March 14, 2017.  For the purposes of the present motion nothing about these facts appears to have changed.

---

[1] *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (noting that the trial court retains the jurisdiction to re-visit or rescind interlocutory orders to which res judicata does not apply).

In March of 2013, Ronald Dane and Dustin Royer were co-workers at the Agency of Transportation. Both were working out of the Agency's Derby office, which services roads and public rights-of-way in the northeastern part of the State, known as District 9.

On March 27, 2013, Dane and Royer were part of a crew harvesting trees within the right-of-way along Interstate 91 to use as firewood for the Agency's Derby building. The harvesting operation had three distinct groups of tasks. Several employees worked at the top of a rise, clearing brush, and cutting down and limbing trees. From there the work process shifted to an excavator and a single operator who would use the bucket and a thumb attachment to pick up the trees and move them downhill to a "bucking site." At the "bucking site" another crew of employees would cut the timber into smaller pieces of firewood for hauling back to the building.

On the day of the incident, Royer was filing-in for the group's usual team leader and excavator operator, Richard Cotnoir. Royer had less experience than Cotnoir at leading the team and at operating the excavator. Dane was working with another employee at the bucking site.

At the start of the incident, Royer was moving a large tree down the hill toward the bucking site. This is one of the points of contested fact. Plaintiff claims the tree was 51 feet long. Defendants contend it was 37 feet. Both lengths were longer than the 15-foot lengths that Cotnoir had been moving the prior day. It is further disputed if Royer had responsibility as either crew leader or excavator operator for directing the clearing crews to cut the trees into 15-foot segments or if that was the responsibility of the clearing crew.

As Royer was bringing the tree down the hill, Dane was standing with a co-worker in the personal safety zone, which had been set up for the workers south of the bucking site to occupy when the excavator was approaching or working in the bucking site. As the excavator moved down the hill, Dane moved toward the bucking site to a point about 20 feet to the north of where he had previously been standing. It is disputed whether this new location was within or without the personal safety zone. Regardless, Royer did not see Dane move because it was within his blind spot. Royer had also been repositioning the excavator's location to improve its grip on the tree.

When Royer swung the cab of the excavator, the tree hit Dane on the back of the leg. Royer saw Dane crouch down after the first hit. Royer panicked and shut down the excavator, which dropped the log, which bounced and hit Dane in the leg a second time, causing him more substantial

injuries than the first contact. Dane was eventually taken from the site in an ambulance. These events occurred in rapid succession.

## Analysis

Vermont Rule of Civil Procedure 56 governs motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment to as a matter of law." V.R.C.P. 56(a). See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554. The moving party must support its assertion with numbered paragraphs with references to materials in the record. V.R.C.P. 56(c)(1). The nonmoving party must show that the material facts are in dispute. *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272. The nonmoving party does this through introducing their own admissible evidence. *Gross*, 2018 VT 80, ¶ 8. Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences. *Brousseau v. Brousseau*, 2007 VT 77, 182 Vt. 533. If the court determines there are no genuine issues of material fact, the court will grant summary judgment. V.R.C.P. 56.

### *Gross Negligence*

In this case, Defendant Royer seeks summary judgment on this issue of gross negligence. Traditionally, the question of whether the facts of a case trigger gross negligence is an issue of fact that must be reserved for the jury. *Kane v. Lamothe*, 2007 VT 91, ¶ 12. While gross negligence presents a higher standard than plain negligence, the allegation "may be dismissed by the court only if reasonable minds cannot differ." *Kennery v. State*, 2011 VT 121, ¶ 41.

Examining the Supreme Court's reasoning in both *Kane* and *Kennery* sheds some light on this distinction. In *Kane*, the Supreme Court dismissed a claim of gross negligence against a Trooper for his decision not to arrest an abusive boyfriend. 2007 VT 91, at ¶¶ 3,4, and 13. In *Kennery*, the Court denied a motion to dismiss a gross negligence claim when Troopers went to wrong house during a welfare check and failed to find a woman who had fallen on the ice. 2011 VT 121, ¶¶ 4, 5, and 42.

In *Kane*, the plaintiff alleged multiple violations from the Vermont State Police Rules & Regulations, Operational Policies & Procedures (the "Manual"). 2007 VT 91, at ¶¶10–13. The Court did not find this Manual to be persuasive for three reasons. First, the Manual had not been adopted as an administrative rule and had no binding effect and created no rights in the general

public.  Id. at¶ 10.  Second, the act of arresting an individual is a subjective and discretionary act, and the officer's decision not to act does not trigger either a right in others or a responsibility for other's actions.  Id. at ¶ 13.  Third, the Trooper actually exercised discretion in his decision and did not simply leave the field without making a decision.  Id.  While the Court recognized that the Trooper could have been more diligent, there was nothing to suggest that he had acted without care or with indifference to the plaintiff.  Id.  There was no evidence that the Trooper failed to take basic and necessary steps, or that his decision not to arrest was an abdication of his decision-making obligations.

In contrast, the Troopers in *Kennery* went to the wrong house despite being told the correct address and despite information that should have alerted the alert law enforcement officers that they were at the wrong house.  2011 VT 121, ¶¶ 4, 15 This included the fact that they went to the odd-numbered side of the street; ignored the discrepancy between descriptions of the person's house and the house they were investigating; the lack of a hidden key at the location despite what was described to them; and the location of the mailbox.  Id.  In contrast to *Kane*, this was not a discretionary decision-making process but a largely ministerial task.  Id. at ¶ 36.

The distinctions between *Kane* and *Kennery*, between a determination of no gross negligence as a matter of law and a disputed factual question, rests on the variety of factual differences, none of which can be labelled as definitive.  For example, one of the most striking distinctions between the cases is the difference between ministerial and discretionary acts.  While this difference is far more central to the question of qualified immunity, it is helpful, but not dispositive to the question of whether there is or is not a prima facie claim of gross negligence as a matter of law.  The distinction's primary role in this analysis is not to distinguish between negligence and gross negligence, but to establish the nature and quality of the efforts that are required in a given situation and to define where the threshold between negligence and gross negligence may be located.

This is because the distinction between negligence and gross negligence lies along a continuum that is informed by the interplay between the nature of the task, the quality of the duty owed, and the specific facts of the case.  *Langdon–Davies v. Stalbird*, 122 Vt. 56, 57 (1960); see also *Hardingham v. United Counseling Services of Bennington County, Inc.*, 164 Vt. 478, 486–88 (1995) (Dooley, J. dissenting).  As Justice Dooley notes, the distinction between negligence and gross negligence is a difficult one to make with any bright-line or consistency because the factual nature, and "the only reasonable course of action [is] to leave the decision of whether gross negligence [is] present to the

jury except in the most extreme cases." Id at 487. Justice Dooley's phrasing is somewhat harsher articulation of the majority view. But while the holdings of *Hardingham* and *Kane* soften this phrasing somewhat and create more room for dismissal where the undisputed material facts and the nature of the duty establish that Defendant's actions lie below what any reasonable person would define as gross negligence, the standard still leaves a high burden to establish this as a matter of law. *Kane*, 2007 VT 91, at ¶ 13; *Hardingham*, 164 Vt. at 483.

In this case, Plaintiff's claim centers on Defendant's operation of the excavator.[2] Within this operation, Plaintiff frames the primary issue as whether Defendant was moving logs that were too long. There is evidence that Royer was moving logs that were two to three times longer in length from the logs that Cotnoir was moving the prior day. This is relevant because these longer trees extended the radius of potential danger around the excavator. A reasonable jury could also find that the larger trees were more difficult to manage and diverted the operator's attention away from monitoring the area around the excavator to focus on keeping the longer logs balanced and avoiding tipping over the excavator. It is disputed whether Royer or the clearing crew had the ultimate say over the length of these logs, and these distinctions factors into the issue of gross negligence as well.

Together these disputed facts and their implications create a colorable question of whether Royer's actions in operating the excavator and moving logs from the cleaning site to the bucking site constituted gross negligence in terms of the specific allegations.[3] While it is possible to view Royer's actions as "error[s] of judgment," it is equally plausible to read them as "a deeper indifference" toward the safety of the workers at the site. *Hardiman*, 164 Vt. at 481. Given this plausible and reasonable difference in interpretation, the issue must go to the jury to decide. Id. For these reasons, summary judgment on Plaintiff's gross negligence claims is **Denied.**

---

[2] This distinction is an important one. Defendant's motion seeks to focus on the larger project, such as the choice to use an excavator rather than a front loader and various safety processes implemented through the tailgate safety meeting. Plaintiff does not dispute these points, but he centers his claims for negligence and gross negligence on the Royer's choices and actions solely as operator of the excavator.

[3] Defendant puts a great deal of emphasize on the opinions offered by the expert witnesses. While these opinions help explain some of the OSHA issues and the safety standards of the site, the opinions do not offer the definitive proof of the underlying facts leading to Royer striking Defendant with the log or whether Royer's actions constituted gross negligence, which is ultimately a fact-finding measure and not a determination that can be established through opinion as to the standards or the quality of Royer's compliance with those standards.

*Comparative Negligence*

As to the issue of comparative negligence, the resolution of this issue is dependent on two sets of disputed facts. In addition to the disputed facts discussed above, there is the question of whether Dane was inside or outside the personal safety zone. Dane's deposition indicates that he believes he was within this area at the time he was struck. Other witnesses appear to put him outside the area. Royer cannot testify where Dane was because he did not see Dane prior to the strike, and he cannot state with any degree of certainty where Dane was at the time of the incident. Given these factual disputes, the Court cannot determine as a matter of law that Defendant Royer is entitled to summary judgment. *Barber v. LaFromboise*, 2006 VT 77, ¶ 15; see also *Labrecque v. American News Co.*, 115 Vt. 305, 307 (1948) ("Ordinarily contributory negligence is a question of fact for the jury . . . ."). For this reason, Defendant's motion for summary judgment on the issue of comparative negligence is **Denied.**

*Non-Delegable Duty*

Defendant Royer's third argument seeks to cast his actions as part of the employer's responsibility to provide a safe workspace. This argument was addressed at some length in the Court's August 24, 2020 decision, and nothing in Defendant's more recent filings dissuade the Court from its earlier conclusions. The key distinction here is that the portion of Royer's actions that are at issue are not those in which he was acting in his capacity as a supervisor and manager of Dane, but rather his role as excavator operator. He was simply operating a piece of heavy equipment. There is no evidence to support the idea that he was simultaneously supervising Dane, particularly at the moments where he was occupied with moving logs from the clearing area to the bucking pile. At such times, he was purely an operator.

While there is some dispute as to the applicable guidelines and whether Royer's operation of the excavator fell within any employer mandated standards, none of the supplemental evidence establishes this to a degree where the Court can conclude that Royer's choices as operator were part of the employer's duty. *Gerrish v. Savard*, 169 Vt. 468, 474 (1995). As *Garrity* holds, the key question here is whether Royer owed a personal duty to Dane that is separate from the Agency of Transportation's broader duty to create a safe workplace. *Garrity v. Manning*, 164 Vt. 507, 513–14 (1996). Such a duty arguably exists in the operation of the excavator, which Royer had a duty, to Dane and the other individuals at the worksite, to operate in a safe manner.

This duty in Royer is similar to the example of the spool cited in *Garrity*. Id. (citing *Craft v. Scaman*, 715 S.W.2d 531 (Mo.Ct.App.1986)). In *Craft*, the court found a personal duty and exception to the workers' compensation law arose when an officer of the company propped up a spool on a machine with a board that ultimately failed and cause the spool to go flying off the machine injuring the plaintiff. Id. In both *Craft* and the present case, the issue is safe operation of machinery, which any operator owes to individuals who may be working next to the piece of machinery.

Given that the facts could be found to give rise to this personal duty, summary judgment and exclusion of Plaintiff's negligence claims against Defendant based on 21 V.S.A. § 624 is **Denied.**

*Qualified Immunity*

Defendant Royer's final argument seeks to revive his claim to qualified immunity. This argument fails as a matter of law based on the ministerial nature of Defendant's work. As the court noted in its prior August 24, 2020 decision the law of qualified immunity requires proof of three elements. *Libercent v. Aldrich*, 149 Vt. 76, 81 (1987). The employee seeking immunity must show that they were "1) acting during the court of their employment and acting, or reasonably believe they are acting, within the scope of their authority; 2) acting in good faith; and 3) performing discretionary, as opposed to ministerial acts." Id.

In this case, there is no evidence to suggest that Royer was acting either outside the scope of his employment or in bad faith. Instead, the issue lies with the nature of Royer's task. There has been significant ink shed in the effort to pin down the distinction between ministerial and discretionary tasks. Id.; see also *Civetti v. Turner*, 2022 VT 64, ¶¶ 9–12. The distinction between discretionary and ministerial acts is often defined as the right to be wrong. This is a pithy way of encapsulating the distinction between tasks where there is really only one right answer and tasks where the official is charged with making a judgment call. In *Libercent*, the defendant was a mechanic, and while he argued that there was a number of steps and decisions that went into repairing an engine, the Court rejected this as a discretionary basis because no matter the pathways, there is only one right answer to truck engine repair, which is the work that will make the engine function safely and steadily. 149 Vt. at 81–82. In contrast, decisions related to an investigation are inherently discretionary because the actor will invariably have to choose between a variety of

options, and not all choices will lead to a particular outcome. *Amy's Enterprises v. Sorrell*, 174 Vt. 623, 625 (2002)(mem.).

In the present case, the operation of an excavator to move logs from one site to another is ministerial in nature. While there may be multiple ways to move logs, the only appropriate way is to move them safely and without hitting co-workers at the site. There is no right to be wrong, and the discretion that an operator may exercise is not in the furtherance of any policy but must be subservient to safety. As such, Royer's actions were ministerial, and he is ineligible for qualified immunity. Therefore, Defendant's fourth and final basis for summary judgment is **Denied.**

## <u>ORDER</u>

Based on the foregoing, Defendant's motion for summary judgment is **Denied.** The Court shall schedule this matter for a pre-trial conference at the next available date once available trial dates are set.

Electronically signed on 6/13/2024 10:17 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge